WILLIAM E. D. STOKES, Appellant, *v.* CONTINENTAL TRUST COMPANY OF THE CITY OF NEW YORK, Respondent.

1. STOCK CORPORATIONS — INCREASE IN CAPITAL STOCK THEREOF — RIGHT OF STOCKHOLDER TO SUBSCRIBE FOR HIS PROPORTIONATE SHARE OF NEW STOCK.  A stockholder in a domestic corporation has an inherent right to a proportionate share of new stock issued for money only and not to purchase property for the purposes of the corporation or to effect a consolidation, and while he can waive that right, he cannot be deprived of it without his consent except when the stock is issued at a fixed price not less than par and he is given the right to take at that price in proportion to his holding, or in some other equitable way that will enable him to protect his interest by acting on his own judgment and using his own resources.

2. SAME — WHEN STOCKHOLDER'S RIGHT TO TAKE NEW STOCK NOT WAIVED BY HIS DEMAND TO BUY IT AT PAR — WHEN HE MAY RECOVER DAMAGES UPON SALE OF HIS SHARE OF NEW STOCK TO THIRD PARTY — MEASURE OF DAMAGES.  Where a stockholder in a domestic corporation consented to an increase of capital stock, but protested against the acceptance of a proposition to sell the new stock, when issued, to a third party at a fixed price, and demanded the right to subscribe and pay for his proportionate share of the new stock at par, which demand was refused by the corporation and a resolution thereafter adopted directing the sale of all the new stock, when issued, to a third party at a fixed price, which was less than the market value of such stock at the time it was issued and delivered, such stockholder, by demanding his proportionate share of the new stock at par, did not thereby waive his right to take it at the fixed price at which it was sold to the outside party, since the price was not fixed until after he had made his demand.  After the price was fixed it was the duty of the directors of the corporation to give him an opportunity to purchase at that price before they could sell his

property to a third party, even with the approval of a large majority of the stockholders. The stock having been sold to a third party without any opportunity being given to the stockholder to take it at the fixed price, he can recover from the corporation the difference between the value of his stock at that price and the market value of the stock upon the day that it was delivered to the third party.

*Stokes* v. *Continental Trust Co.,* 99 App. Div. 377, reversed.

(Argued May 11, 1906; decided November 13, 1906.) :

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 4, 1905, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

This action was brought by a stockholder to compel his corporation to issue to him at par such a proportion of an increase made in its capital stock as the number of shares held by him before such increase bore to the number of all the shares originally issued, and in case such additional shares could not be delivered to him for his damages in the premises.

The defendant is a domestic banking corporation in the city of New York, organized in 1890, with a capital stock of $500,000, consisting of 5,000 shares of the par value of $100 each. The plaintiff was one of the original stockholders and still owns all the stock issued to him at the date of organization, together with enough more acquired since to make 221 shares in all. On the 29th of January, 1902, the defendant had a surplus of $1,048,450.94, which made the book value of the stock at that time $309.69 per share. On the 2nd of January, 1902, Blair & Company, a strong and influential firm of private bankers in the city of New York, made the following proposition to the defendant: "If your stockholders at the special meeting to be called for January 29th, 1902, vote to increase your capital stock from $500,000 to $1,000,000 you may deliver the additional stock to us as soon as issued at $450 per share ($100 par value) for ourselves and our associates, it being understood that we may nominate ten of the

21 trustees to be elected at the adjourned annual meeting of stockholders."

The directors of the defendant promptly met and duly authorized a special meeting of the stockholders to be called to meet on January 29th, 1902, for the purpose of voting upon the proposed increase of stock and the acceptance of the offer to purchase the same. Upon due notice a meeting of the stockholders was held accordingly, more than a majority attending either in person or by proxy. A resolution to increase the stock was adopted by the vote of 4,197 shares, all that were cast. Thereupon the plaintiff demanded from the defendant the right to subscribe for 221 shares of the new stock at par, and offered to pay immediately for the same, which demand was refused. A resolution directing a sale to Blair & Company at $450 a share was then adopted by a vote of 3,596 shares to 241. The plaintiff voted for the first resolution but against the last, and before the adoption of the latter he protested against the proposed sale of his proportionate share of the stock and again demanded the right to subscribe and pay for the same, but the demand was refused.

On the 30th of January, 1902, the stock was increased, and on the same day was sold to Blair & Company at the price named. Although the plaintiff formally renewed his demand for 221 shares of the new stock at par and tendered payment therefor, it was refused upon the ground that the stock had already been issued to Blair & Company. Owing in part to the offer of Blair & Company, which had become known to the public, the market price of the stock had increased from $450 a share in September, 1901, to $550 in January, 1902, and at the time of the trial, in April, 1904, it was worth $700 per share.

Prior to the special meeting of the stockholders, by authority of the board of directors a circular letter was sent to each stockholder, including the plaintiff, giving notice of the proposition made by Blair & Company and recommending that it be accepted. Thereupon the plaintiff notified the defendant that he wished to subscribe for his proportionate share of the

new stock, if issued, and at no time did he waive his right to subscribe for the same.    Before the special meeting, he had not been definitely notified by the defendant that he could not receive his proportionate part of the increase, but was informed that his proposition would " be taken under consideration."

After finding these facts in substance, the trial court found, as conclusions of law, that the plaintiff had the right to subscribe for such proportion of the increase, as his holdings bore to all the stock before the increase was made ; that the stockholders, directors and officers of the defendant had no power to deprive him of that right, and that he was entitled to recover the difference between the market value of 221 shares on the 30th of January, 1902, and the par value thereof, or the sum of $99,450, together with interest from said date.    The judgment entered accordingly was reversed by the Appellate Division, and the plaintiff appealed to this court, giving the usual stipulation for judgment absolute in case the order of reversal should be affirmed.

*Ernest Hall, C. L. Harwood* and *Mortimer K. Flagg* for appellant.    Immediately upon the increase of the capital stock of the defendant corporation, the appellant, being then a stockholder, became *ipso facto* entitled, to the exclusion of any persons not stockholders, to subscribe for at par and to receive an amount of the new stock proportionate to his holdings prior to the increase.    This right is inherent, pre-emptive and vested ; and the sale of the entire issue of new stock to Blair & Co. should be viewed by a court of equity as an unwarranted confiscation thereof.    (Cook on Corp. [5th ed.] § 286 ; Clark & Marshall on Corp. § 408 ; Angell & Ames on Corp. 430 ; Thompson on Corp. § 2094 ; Beach on Corp. § 473 ; Purdy's Beach on Corp. § 188 ; Morawetz on Corp. § 455 ; Dill on Corp. [3d ed.] 47 ; *Bank of Montgomery County* v. *Reese,* 26 Penn. St. 143 ; *Eidman* v. *Bowman,* 58 Ill. 444 ; *Cunningham's Appeal,* 108 Penn. St. 546 ; *Dousman* v. *W., etc., Co.,* 40 Wis. 418 ; *Jones* v. *Morrison,* 31 Minn. 140 ; *R. T. Co.* v. *Reading,* 137 Penn. St. 282 ; *Jones*

v. *Railroad Co.*, 67 N. H. 119; *Way* v. *A. G. Co.*, 60 N. J. Eq. 29, 263; *Morris* v. *Stevens*, 178 Penn. St. 563.) There is no rule of law or of public policy and no power in the officers or stockholders to compel an individual stockholder to pay more than par for his share of the new stock. (*Hammond* v. *Edison Co.*, 90 N. W. Rep. [Mich.] 1040; Cook on Corp. [5th ed.] § 286.)

*William B. Hornblower, Robert W. De Forest* and *Robert Thorne* for respondent. A corporation has a legal right, while acting in good faith, to issue new stock either to strangers or to its old stockholders, and at such fair price as it may fix. (*Miller* v. *I. C. R. R. Co.*, 24 Barb. 312.) The right to issue new stock was like a corporate franchise or any other property of the corporation which was held in trust by the corporation for the benefit of all its stockholders, to be administered by the stockholders or the directors for the best interests of all, and in such manner that no one or more of the stockholders should gain any unfair advantage or benefit therefrom, to the exclusion of or at the expense of any of the others. (*Reese* v. *Bank of Montgomery*, 31 Penn. St. 80; *Miller* v. *I. C. R. R. Co.*, 24 Barb. 312.)

VANN, J. No exception worthy of notice appears in the record, except those filed to the conclusions of law found by the trial judge. If those conclusions are supported by the facts found, the Appellate Division had no power to reverse the judgment rendered by the Special Term on questions of law only, as, from the silence of the record, it must be presumed was done. (Code Civ. Pro. § 1338.) If the facts found did not warrant the legal conclusions of the trial court the order of reversal was right and should be affirmed. Thus the question presented for decision is whether according to the facts found the plaintiff had the legal right to subscribe for and take the same number of shares of the new stock that he held of the old?

The subject is not regulated by statute and the question

presented has never been directly passed upon by this court, and only to a limited extent has it been considered by courts in this state. (*Miller* v. *Illinois Central R. R. Co.*, 24 Barb. 312; *Matter of Wheeler*, 2 Abb. Pr. [N. S.] 361; *Currie* v. *White*, 45 N. Y. 822.)

In the first case cited judgment was rendered by a divided vote of the General Term in the first district. The court held that the plaintiff was entitled to no relief because he did not own any shares when the new stock was issued but only an option, and that he could not claim to be an actual holder until he had exercised his right of election. The court further said, however, that if he was the owner of shares at the time of the new issue he had no absolute right as such owner to a distributive allotment of the new stock.

*Matter of Wheeler* was decided by Judge MASON at Special Term, and although the point was not directly involved, the learned judge said: "As I understand the law all these old stockholders had a right to share in the issuing of this new stock in proportion to the amount of stock held by them. And if none of the stock was to be apportioned to the old stockholders, they had certainly the right to have the new stock sold at public sale, and to the highest bidder, that they might share in the gains arising from the sale. In short, the old stockholders, as this was good stock and above par, had a property in the new stock, or a right at least to be secured the profits to be derived from a fair sale of it if they did not wish to purchase it themselves; and they have been deprived of this by the course which these directors have taken with this new stock by transferring or issuing it to themselves and others in a manner not authorized by law."

In *Currie* v. *White* the point was not directly involved, but Judge FOLGER, referring to the rights acquired under a certain contract, said: "One of these rights was to take new shares upon any legitimate increase of the capital stock, which right attaches to the old shares, not as profit or income, but as inherent in the shares in their very creation," citing *Atkins* v. *Albree* (12 Allen, 359); *Brander* v. *Brander* (4 Ves. 800, and

notes, Sumner ed.). While this was said in a dissenting opinion, Judge RAPALLO, who spoke for the court, concurred, saying, " As to the claim for the additional stock, I concur in the conclusions of my learned brother FOLGER." The fair implication from both opinions is that if the plaintiff had preserved his rights, he would have been entitled to the new stock.

In other jurisdictions the decisions support the claim of the plaintiff with the exception of *Ohio Insurance Co.* v. *Nunnemacher* (15 Ind. 294) which turned on the language of the charter. The leading authority is *Gray* v. *Portland Bank*, decided in 1807 and reported in 3 Mass. 364. In that case a verdict was found for the plaintiff, subject, by the agreement of the parties, to the opinion of the court upon the evidence in the case whether the plaintiff was entitled to recover, and, if so, as to the measure of damages. The court held that stockholders who held old stock had a right to subscribe for and take new stock in proportion to their respective shares. As the corporation refused this right to the plaintiff he was permitted to recover the excess of the market value above the par value, with interest. In the course of its argument the court said : " A share in the stock or trust when only the least sum has been paid in is a share in the power of increasing it when the trustee determines or rather when the *cestuis que trustent* agree upon employing a greater sum.    *    *    * A vote to increase the capital stock, if it was not the creation of a new and disjointed capital, was in its nature an agreement among the stockholders to enlarge their shares in the amount or in the number to the extent required to effect that increase.    *    *    * If from the progress of the institution and the expense incurred in it any advance upon the additional shares might be obtained in the market, this advance upon the shares relinquished belonged to the whole, and was not to be disposed of at the will of a majority of the stockholders to the partial benefit of some and exclusion of others."

This decision has stood unquestioned for nearly a hundred years and has been followed generally by courts of the highest

standing. It is the foundation of the rule upon the subject that prevails, almost without exception, throughout the entire country.

In *Way* v. *American Grease Company* (60 N. J. Eq. 263, 269) the head note fairly expresses the decision as follows: " Directors of a corporation, which is fully organized and in the active conduct of its business, are bound to afford to existing stockholders an opportunity to subscribe for any new shares of its capital, in proportion to their holdings, before disposing of such new shares in any other way."

In *Eidman* v. *Bowman* (58 Ill. 444, 447) it was said: " When this corporation was organized, the charter and all of its franchises and privileges vested in the shareholders and the directors became their trustees for its management. The right to the remainder of the stock, when it should be issued, vested in the original stockholders, in proportion to the amount each held of the original stock, if they would pay for it, and was as fully theirs as was the stock already held and for which they had paid."

In *Dousman* v. *Wisconsin, etc., Co.* (40 Wis. 418, 421) it was held that a court of equity would compel a corporation to issue to every stockholder his proportion of new stock on the ground that " he has a right to maintain his proportionate interest in the corporation, certainly as long as there is sufficient stock remaining undisposed of by the corporation."

In *Jones* v. *Morrison* (31 Minn. 140, 152) it was said: " When the proposition that a corporation is trustee of the corporate property for the benefit of the stockholders in proportion to the stock held by them is admitted (and we find no well considered case which denies it), it covers as well the power to issue new stock as any other franchise or property which may be of value, held by the corporation. The value of that power, where it has actual value, is given to it by the property acquired and the business built up with the money paid by the subsisting stockholders. It happens not infrequently that corporations, instead of distributing their profits in the way of dividends to stockholders, accumulate them till

a large surplus is on hand.   No one would deny that, in such case, each stockholder has an interest in the surplus which the courts will protect.   No one would claim that the officers, directors or majority of the stockholders, without the consent of all, could give away the surplus, or devote it to any other than the general purposes of the corporation.   But when new stock is issued, each share of it has an interest in the surplus equal to that pertaining to each share of the original stock. And if the corporation, either through the officers, directors or·majority of stockholders, may dispose of the new stock to whomsoever it will, at whatever price it may fix, then it has the power to diminish the value of each share of old stock by letting in other parties to an equal interest in the surplus and in the good will or value of the established business."

In *Real Estate Trust Co.* v. *Bird* (90 Md. 229, 245) the court said : " There can be no doubt that the general rule is that when the capital stock of a corporation is increased by the issue of new shares, authorized by the charter, the holders of the original stock are entitled to the new stock in the proportion that the number of shares held by them bears to the whole number before the increase."

In all these cases, as well as many others, *Gray* v. *Portland Bank* (*supra*) is followed without criticism or question.   In some cases the same result is reached without citing that case. Thus in *Jones* v. *Concord & Montreal R. R. Co.* (67 N. H. 119) it was declared, as stated in the head note, that " an issue of new shares of stock in an increase of the capital of a corporation is a partial division of the common property, which can be taken from the original shareholders only by their consent or by legal process."

So in *Bank of Montgomery* v. *Reese* (26 Pa. St. 143, 146 ; 31 id. 78) the court said : " Morgan L. Reese as one of the stockholders of the Bank of Montgomery, was entitled to a portion of the unsold capital stock.   His right was as valid as that of a tenant in common of real estate to his purpart on a partition.   The corporation was a trustee for the stockholders, but in disregard of the duties of the trust in distributing this

stock it deprived Mr. Reese of the number of shares to which
he was entitled.   He has established his right in this action."
The question of power was broadly presented and decided.

In another case in the same state, *Morris* v. *Stevens* (178
Pa. St. 563, 578), Mr. Chief Justice STERRETT used the fol-
lowing language : " In general, the present holders of stock
have a primary right to subscribe in proportion to their hold-
ings for any new issue.   The stockholders themselves cer-
tainly may determine otherwise and order a sale to the public
and payment of the proceeds into the treasury.   But this is
exceptional and the exercise of a reserved power which should
not be permitted unless there is a clear intent of the stock-
holders to do so." (See, also, *Cunningham's Appeal*, 108
Pa. St. 546; *Reading Trust Co.* v. *Reading Iron Works*,
137 Pa. St. 282; *De La Cuesta* v. *Ins. Co.*, 136 Pa. St. 62;
*Humboldt Driving Park Assoc.* v. *Stevens*, 34 Neb. 528,
534; *Hart* v. *St. Charles Street R. R. Co.*, 30 La. Ann.
758; *State* v. *Smith*, 48 Vt. 290; *Atkins* v. *Albree*, 94
Mass. 359; *Hammond* v. *Edison Illuminating Co.*, 131
Mich. 79; *Knapp* v. *Publishers George Knapp & Co.*, 127
Mo. 53; *Baltimore City Pass. R. Co.* v. *Hambleton*, 77
Md. 341; *Jones* v. *C. & M. R. R. Co.*, 67 N. H. 119; Id.
234.)

The elementary writers are very clear and emphatic in lay-
ing down the same rule.   Thus in 2 Beach on Private Corpo-
rations (§ 473) the learned author says : " A stockholder of
the old stock, at the time of the vote to augment the capital
of a company, has a right in the new stock, in proportion to
the amount of his interest in the old, of which he cannot be
rightfully deprived by other stockholders."

" When the capital stock of a corporation is increased by
the issue of new shares each holder of the original stock has a
right to offer to subscribe for and to demand from the corpo-
ration such a proportion of the new stock as the number of
shares already owned by him bears to the whole number
of shares before the increase.   This pre-emptive right of the
shareholders in respect to new stock is well recognized.

\* \* \* The corporation cannot compel the old stockholders upon their subscription for new stock to pay more than par value therefor. They are entitled to it without extra burden or price beyond the regular par value. An attempt to deprive the stockholder of this right will be enjoined in the absence of laches or acquiescence. The courts go very far in protecting the right of stockholders to subscribe for new stock. It is often a very important right." (1 Cook on Corporations [4th ed.], 286.)

"Each shareholder, it has been held, has a right to the opportunity to subscribe for and take the new or increased stock in proportion to the old stock held by him; so that a vote at a shareholders' meeting, directing the new stock to be sold, without giving to each shareholder such an opportunity, is void as to any dissenting shareholder." (10 Cyc. 543.)

"Those who are shareholders when an increase of capital stock is effected enjoy the right to subscribe to the new stock in proportion to their original holdings and before subscriptions may be received from outsiders." (26 Am. & Eng. Encyc. [2nd ed.] 947. See, also, 2 Thompson's Commentaries, § 2094; Angell & Ames on Corporations, 430; Morawetz on Corporations, § 455.)

If the right claimed by the plaintiff was a right of property belonging to him as a stockholder he could not be deprived of it by the joint action of the other stockholders and of all the directors and officers of the corporation.

What is the nature of the right acquired by a stockholder through the ownership of shares of stock? What rights can he assert against the will of a majority of the stockholders and all the officers and directors? While he does not own and cannot dispose of any specific property of the corporation, yet he and his associates own the corporation itself, its charter, franchises and all rights conferred thereby, including the right to increase the stock. He has an inherent right to his proportionate share of any dividend declared, or of any surplus arising upon dissolution, and he can prevent waste or misappropriation of the property of the corporation by those

in control.    Finally, he has the right to vote for directors and upon all propositions subject by law to the control of the stock-holders, and this is his supreme right and main protection. Stockholders have no direct voice in transacting the corporate business, but through their right to vote they can select those to whom the law intrusts the power of management and control.

A corporation is somewhat like a partnership, if one were possible, conducted wholly by agents where the copartners have power to appoint the agents, but are not responsible for their acts.    The power to manage its affairs resides in the directors, who are its agents, but the power to elect directors resides in the stockholders.    This right to vote for directors and upon propositions to increase the stock or mortgage the assets, is about all the power the stockholder has.    So long as the management is honest, within the corporate powers and involves no waste, the stockholders cannot interfere, even if the administration is feeble and unsatisfactory, but must cor-rect such evils through their power to elect other directors. Hence, the power of the individual stockholder to vote in proportion to the number of his shares, is vital and cannot be cut off or curtailed by the action of all the other stockholders even with the co-operation of the directors and officers.

In the case before us the new stock came into existence through the exercise of a right belonging wholly to the stock-holders.    As the right to increase the stock belonged to them, the stock when increased belonged to them also, as it was issued for money and not for property or for some purpose other than the sale thereof for money.    By the increase of stock the voting power of the plaintiff was reduced one-half, and while he consented to the increase he did not consent to the disposition of the new stock by a sale thereof to Blair & Company at less than its market value, nor by sale to any person in any way except by an allotment to the stockholders. The increase and sale involved the transfer of rights belong-ing to the stockholders as part of their investment.    The issue of new stock and the sale thereof to Blair & Company

was not only a transfer to them of one-half the voting power of the old stockholders, but also of an equitable right to one-half the surplus which belonged to them. In other words, it was a partial division of the property of the old stockholders. The right to increase stock is not an asset of the corporation any more than the original stock when it was issued pursuant to subscription. The ownership of stock is in the nature of an inherent but indirect power to control the corporation. The stock when issued ready for delivery does not belong to the corporation in the way that it holds its real and personal property, with power to sell the same, but is held by it with no power of alienation in trust for the stockholders, who are the beneficial owners and become the legal owners upon paying therefor. The corporation has no rights hostile to those of the stockholders, but is the trustee for all including the minority. The new stock issued by the defendant under the permission of the statute did not belong to it, but was held by it the same as the original stock when first issued was held in trust for the stockholders. It has the same voting power as the old, share for share. The stockholders decided to enlarge their holdings, not by increasing the amount of each share, but by increasing the number of shares. The new stock belonged to the stockholders as an inherent right by virtue of their being stockholders, to be shared in proportion upon paying its par value or the value per share fixed by vote of a majority of the stockholders, or ascertained by a sale at public auction. While the corporation could not compel the plaintiff to take new shares at any price, since they were issued for money and not for property, it could not lawfully dispose of those shares without giving him a chance to get his proportion at the same price that outsiders got theirs. He had an inchoate right to one share of the new stock for each share owned by him of the old stock, provided he was ready to pay the price fixed by the stockholders. If so situated that he could not take it himself, he was entitled to sell the right to one who could, as is frequently done. Even this gives an advantage to capital,

but capital necessarily has some advantage. Of course, there is a distinction when the new stock is issued in payment for property, but that is not this case. The stock in question was issued to be sold for money and was sold for money only. A majority of the stockholders, as part of their power to increase the stock, may attach reasonable conditions to the disposition thereof, such as the requirement that every old stockholder electing to take new stock shall pay a fixed price therefor, not less than par, however, owing to the limitation of the statute. They may also provide for a sale in parcels or bulk at public auction, when every stockholder can bid the same as strangers. They cannot, however, dispose of it to strangers against the protest of any stockholder who insists that he has a right to his proportion. Otherwise the majority could deprive the minority of their proportionate power in the election of directors and of their proportionate right to share in the surplus, each of which is an inherent, preemptive and vested right of property. It is inviolable and can neither be taken away nor lessened without consent, or a waiver implying consent. The plaintiff had power, before the increase of stock, to vote on 221 shares of stock, out of a total of 5,000, at any meeting held by the stockholders for any purpose. By the action of the majority, taken against his will and protest, he now has only one-half the voting power that he had before, because the number of shares has been doubled while he still owns but 221. This touches him as a stockholder in such a way as to deprive him of a right of property. Blair & Company acquired virtual control, while he and the other stockholders lost it. We are not discussing equities, but legal rights, for this is an action at law, and the plaintiff was deprived of a strictly legal right. If the result gives him an advantage over other stockholders, it is because he stood upon his legal rights, while they did not. The question is what were his legal rights, not what his profit may be under the sale to Blair & Company, but what it might have been if the new stock had been issued to him in proportion to his holding of the old. The other stockholders could give

their property to Blair & Company, but they could not give his.

A share of stock is a share in the power to increase the stock, and belongs to the stockholders the same as the stock itself. When that power is exercised, the new stock belongs to the old stockholders in proportion to their holding of old stock, subject to compliance with the lawful terms upon which it is issued. When the new stock is issued in payment for property purchased by the corporation, the stockholders' right is merged in the purchase, and they have an advantage in the increase of the property of the corporation in proportion to the increase of stock. When the new stock is issued for money, while the stockholders may provide that it be sold at auction or fix the price at which it is to be sold, each stockholder is entitled to his proportion of the proceeds of the sale at auction, after he has had a right to bid at the sale, or to his proportion of the new stock at the price fixed by the stockholders.

We are thus led to lay down the rule that a stockholder has an inherent right to a proportionate share of new stock issued for money only and not to purchase property for the purposes of the corporation or to effect a consolidation, and while he can waive that right, he cannot be deprived of it without his consent except when the stock is issued at a fixed price not less than par and he is given the right to take at that price in proportion to his holding, or in some other equitable way that will enable him to protect his interest by acting on his own judgment and using his own resources. This rule is just to all and tends to prevent the tyranny of majorities which needs restraint, as well as virtual attempts to blackmail by small minorities which should be prevented.

The remaining question is whether the plaintiff waived his rights by failing to do what he ought to have done, or by doing something he ought not to have done. He demanded his share of the new stock at par, instead of at the price fixed by the stockholders, for the authorization to sell at $450 a share was virtually fixing the price of the stock. He did

more than this, however, for he not only voted against the proposition to sell to Blair & Company at $450, but as the court expressly found, he " protested 'against the proposed sale of his proportionate share of the stock and again demanded the right to subscribe and pay for the same which demands were again refused," and " the resolution was carried notwithstanding such protest and demands." Thus he protested against the sale of his share before the price was fixed, for the same resolution fixed the price and directed the sale, which was promptly carried into effect. If he had not attended the meeting, called upon due notice to do precisely what was done, perhaps he would have waived his rights, but he attended the meeting and before the price was fixed demanded the right to subscribe for 221 shares at par and offered to pay for the same immediately. It is true that after the price was fixed he did not offer to take his share at that price, but he did not acquiesce in the sale of his proportion to Blair & Company, and unless he acquiesced the sale as to him was without right. He was under no obligation to put the corporation in default by making a demand. The ordinary doctrine of demand, tender and refusal has no application to this case. The plaintiff had made no contract. He had not promised to do anything. No duty of performance rested upon him. He had an absolute right to the new stock in proportion to his holding of the old and he gave notice that he wanted it. It was his property and could not be disposed of without his consent. He did not consent. He protested in due time, and the sale was made in defiance of his protest. While in connection with his protest he demanded the right to subscribe at par, that demand was entirely proper when made, because the price had not then been fixed. After the price was fixed it was the duty of the defendant to offer him his proportion at that price, for it had notice that he had not acquiesced in the proposed sale of his share, but wanted it himself. The directors were under the legal obligation to give him an opportunity to purchase at the price fixed before they could sell his property to a third

party, even with the approval of a large majority of the stockholders.    If he had remained silent and had made no request or protest he would have waived his rights, but after he had given notice that he wanted his part and had protested against the sale thereof, the defendant was bound to offer it to him at the price fixed by the stockholders.    By selling to strangers without thus offering to sell to him, the defendant wrongfully deprived him of his property and is liable for such damages as he actually sustained.

The learned trial court, however, did not measure the damages according to law.    The plaintiff was not entitled to the difference between the par value of the new stock and the market value thereof, for the stockholders had the right to fix the price at which the stock should be sold.    They fixed the price at $450 a share, and for the failure of the defendant to offer the plaintiff his share at that price we hold it liable in damages.    His actual loss, therefore, is $100 per share, or the difference between $450, the price that he would have been obliged to pay had he been permitted to purchase, and the market value on the day of sale, which was $550.    This conclusion requires a reversal of the judgment rendered by the Appellate Division and a modification of that rendered by the trial court.

The order appealed from should be reversed and the judgment of the trial court modified by reducing the damages from the sum of $99,450, with interest from January 30th, 1902, to the sum of $22,100, with interest from that date, and by striking out the extra allowance of costs, and as thus modified the judgment of the trial court is affirmed, without costs in this court or in the Appellate Division to either party.

HAIGHT, J. (dissenting).    I agree that the rule that we should adopt is that a stockholder in a corporation has an inherent right to purchase a proportionate share of new stock issued for money only, and not to purchase property necessary for the purposes of the corporation or to effect a consolidation.    While he can waive that right he cannot be deprived

of it without his consent, except by sale at a fixed price at or above par, in which he may buy at that price in proportion to his holding or in some other equitable way that will enable him to protect his interest by acting on his own judgment and using his own resources. I, however, differ with Judge VANN as to his conclusions as to the rights of the plaintiff herein. Under the findings of the trial court the plaintiff demanded that his share of the new stock should be issued to him at par, or $100 per share, instead of $450 per share, the price offered by Blair & Company and the price fixed at the stockholders' meeting at which the new stock was authorized to be sold. This demand was made after the passage of the resolution authorizing the increase of the capital stock of the defendant company and before the passage of the resolution authorizing a sale of the new stock to Blair & Company at the price specified. After the passage of the second resolution he objected to the sale of his proportionate share of the new stock to Blair & Company and again demanded that it be issued to him, and the following day he made a legal tender for the amount of his portion of the new stock at $100 per share. There is no finding of fact or evidence in the record showing that he was ever ready or willing to pay $450 per share for the stock. He knew that Blair & Company represented Marshall Field and others at Chicago, great dry goods merchants, and that they had made a written offer to purchase the new stock of the company provided the stockholders would authorize an increase of its capital stock from five hundred thousand to a million dollars. He knew that the trustees of the company had called a special meeting of the stockholders for the purpose of considering the offer so made by Blair & Company. He knew that the increased capitalization proposed was for the purpose of enlarging the business of the company and bringing into its management the gentlemen referred to. There is no pretense that any of the stockholders would have voted for an increase of the capital stock otherwise than for the purpose of accepting the offer of Blair & Company. All were evidently desirous of interesting the gentle-

men referred to in the company, and by securing their business and deposits increase the earnings of the company. This the trustees carefully considered, and in their notice calling the special meeting of the stockholders distinctly recommended the acceptance of the offer. What, then, was the legal effect of the plaintiff's demand and tender? To my mind it was simply an attempt to make something out of his associates, to get for $100 per share the stock which Blair & Company had offered to purchase for $450 per share; and that it was the equivalent of a refusal to pay $450 per share, and its effect is to waive his right to procure the stock by paying that amount. An acceptance of his offer would have been most unjust to the remaining stockholders. It would not only have deprived them of the additional sum of $350 per share, which had been offered for the stock, but it would have defeated the object and purpose for which the meeting was called, for it was well understood that Blair & Company would not accept less than the whole issue of the new stock. But this is not all. It appears that prior to the offer of Blair & Company the stock of the company had never been sold above $450 per share; that thereafter the stock rapidly advanced until the day of the completion of the sale on the 30th of January, when its market value was $550 per share; but this, under the stipulation of facts, was caused by the rumor and subsequent announcement and consummation of the proposition for the increase of the stock and the sale of such increase to Blair & Company and their associates. It is now proposed to give the plaintiff as damages such increase in the market value of the stock, even though such value was based upon the understanding that Blair & Company were to become stockholders in the corporation, which the acceptance of plaintiff's offer would have prevented. This, to my mind, should not be done. I, therefore, favor an affirmance.

Cullen, Ch. J., Werner and Hiscock, JJ., concur with Vann, J.; Willard Bartlett, J., concurs with Haight, J.; O'Brien, J., absent.

Ordered accordingly.