then make a direction that the parties shall use the power contemplated by the deed with more modern and efficient wheels.

As so modified, the judgment and the order are affirmed, without costs. All concur, except SMITH, P. J., not voting.

---

(86 Misc. Rep. 310)

ARCHER et al. v. TURBO-ELECTRIC CONST. CO. et al.

(Supreme Court, Special Term, New York County. June, 1914.)

1. CONTEMPT (§ 20*)—WHAT CONSTITUTES—DISOBEDIENCE OF DECREE BY SUB-
   TERFUGE.

   Where defendants, at the time of complying with a judgment directing the cancellation of corporate stock issued to them, completely nullified the effect of such judgment by reissuing a part of the same stock to their attorneys for services rendered entirely on their behalf, though nominally rendered in part for the corporation, the effect being to avoid the consequences of a wrongful act committed by them against the corporation and deprive plaintiff of his position as holder of the majority stock, this constituted a disobedience of the judgment for the purpose of defeating it, and rendered them liable for contempt.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. § 20.*]

2. CONTEMPT (§ 20*)—DISOBEDIENCE OF MANDATE—RIGHT TO PUNISH.

   Both at common law and under the express provisions of Judiciary Law, § 753 (Laws 1909, c. 35 [Consol. Laws, c. 30]), the court may punish as a contempt any act which is designed to and does defeat its mandate, though the letter of the decree has been executed.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. § 20.*]

Action by George F. Archer and another against the Turbo-Electric Construction Company and others. Motion made pursuant to Judiciary Law, § 753, to punish defendants and their attorney for contempt. Motion granted.

Blandy, Mooney & Shipman, of New York City (Andrew J. Shipman, of New York City, of counsel), for plaintiff Edward W. Tisdall.

Harrison, Elliott &. Byrd, of New York City (William Byrd, of New York City, of counsel), for plaintiff George F. Archer.

Walter L. McCorkle, of New York City, for defendant G. Emil Hesse.

Appleton D. Palmer, of New York City, for defendant Cornelius J. Bushnell.

George M. Bayne, of New York City, for respondent Howard R. Bayne.

John R. Abney, of New York City, for respondent Henry H. McCorkle.

PAGE, J. [1] This is a motion made pursuant to section 753 of the Judiciary Law (Laws of 1909, c. 35 [Consol. Laws, c. 30]) to punish the defendants Hesse and Bushnell, and Henry H. McCorkle

and Howard R. Bayne, attorney and counsel, respectively, for the said defendants, for contempt in committing acts whereby the rights of the plaintiffs under a judgment of this court are alleged to have been impaired, prejudiced, and defeated. Prior to the commencement of this action, the plaintiff Tisdall purchased from the plaintiff Archer 250 shares of common stock and 53 shares of the preferred stock (being a majority of all stock issued) of the Turbo-Electric Construction Company, a corporation of which Archer, Hesse, and Bushnell constituted the board of directors and Hesse was president. Tisdall was compelled to bring an action to enforce specific performance of the contract of purchase, in which action judgment was entered on August 12, 1913, in his favor. Pursuant thereto the aforesaid 303 shares of stock were on August 25, 1913, transferred upon the books of the company to Tisdall and his nominees. This gave to Tisdall a majority of the lawfully issued shares of the company's stock. In the meantime, on December 30, 1912, Hesse had unlawfully issued to himself 197 shares of the preferred stock of the company, which constituted the balance of the unissued authorized capital stock. Archer began the present action to cancel the said issue of 197 shares to Hesse, and, after the Archer stock was transferred to Tisdall, he was joined as a party plaintiff. On March 16, 1914, judgment was entered herein which declared to be null and void certain resolutions of the board of directors voting the said stock to Hesse, and directed Hesse to forthwith surrender for cancellation the certificate for 197 shares of preferred stock issued to him on December 30, 1912. The judgment further provided "that the plaintiffs or either of them may apply from time to time at the foot of this judgment for such further directions or instructions as may be proper." On March 30, 1914, a special meeting of the board of directors of the Turbo-Electric Construction Company was called by Hesse, as stated in the notice issued under his signature, "to take such action as may be necessary on account of the decision and judgment in the action of Archer and Tisdall against the Turbo-Electric Construction Company and others." At this meeting it was "resolved that certificate No. 5 for 197 shares of the preferred stock of the Turbo-Electric Construction Company issued to G. Emil Hesse, dated December 30, 1912, * * * be canceled and returned to the treasury of the company," and, bills for services rendered to the company in the action of Archer v. Turbo-Electric Construction Co. by Howard R. Bayne and Henry H. McCorkle having been called to the attention of the board, it was further "resolved that the bills of Messrs. Howard R. Bayne and Henry H. McCorkle, above referred to, in the amount of $5,500 be paid, and that certificates of stock in the number of 55 shares of preferred stock be issued to said gentlemen, 40 shares to Henry H. McCorkle and 15 shares to Howard R. Bayne, in full payment of said bills. * * *" Thus, by a single stroke, the judgment of this court directing a cancellation of the 197 shares of stock issued to Hesse was in form complied with, and at the same time its effect completely nullified by the reissuance of a part of the same stock to his attorneys, again depriving the plaintiff Tisdall of his position as holder of a majority of the stock of the com-

pany. The issuance of the stock in this manner to the attorneys for the defendant was clearly unlawful. It was not treasury stock, but unissued authorized capital stock of the company, and, before it could be issued lawfully, every existing stockholder of the company was entitled to an opportunity to subscribe to it in such proportion as the stock he then held bore to the total amount of stock then outstanding. Cook Corp. (7th Ed.) § 70, and cases cited; Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969, 9 Ann. Cas. 738; Snelling v. Richard (C. C.) 166 Fed. 635; semble, Waters v. Waters & Co., 201 N. Y. 184, 94 N. E. 602. Furthermore, the services rendered by the attorneys McCorkle and Bayne, while nominally in part rendered to the corporation, were in fact entirely on behalf of Hesse personally in an unlawful attempt to uphold and avoid the consequences of a wrongful act committed by him against the interests of the corporation. They were not properly chargeable against the corporation as a bona fide debt, and should have been paid for by the individual defendants personally. For this reason also it was unlawful to issue the stock of the company to McCorkle and Bayne, and the transaction could undoubtedly be set aside in equity. It is claimed by the defendants that an action in equity is the only remedy available to the plaintiff Tisdall. In other words, that having already been subjected to the necessity of prosecuting two protracted suits to obtain what he bought, he must now bring a third. Upon the same principle there would be no end to the fruitless litigation imposed upon him, for, as soon as one fraudulent transfer was set aside by decree of court, the defendant, while obeying the decree in form, could nullify it each time by issuing the stock anew to other persons.

[2] The judgments of a court are not of such slight force and effect. Section 1241 of the Code of Civil Procedure provides a means whereby a successful litigant can compel his opponent to carry out the directions of a decree or order. A still broader power exists, both at common law and under the statutes, by virtue of which the court can punish as a contempt any act which is designed to and does defeat and circumvent its mandates, even when the letter of the decree has been executed. In the present case the defendants and their attorneys, while obeying the decree in form, have deliberately proceeded to destroy its effect and turn the plaintiff's victory into defeat by reissuing the stock, which they were directed to cancel, to their attorneys. The court will examine the entire transaction as one act and will hold that, instead of canceling the stock as directed, they in fact transferred it to Bayne and McCorkle in disobedience of the decree of the court, and for the purpose of defeating and nullifying it. Their action is clearly a contempt. It is claimed that the powers conferred by section 753 of the Judiciary Law, supra, relate only to acts committed during the pendency of an action or proceeding, and that after final judgment the court can only proceed under the provisions of section 1241 of the Code. Section 1241 would be unavailing here, for the reason that the decree has been carried out in form. The case of King v. Barnes, 113 N. Y. 476, 21 N. E. 182, is ample authority

for the proposition that where, as in the case at bar, leave is granted to apply at the foot of the judgment for further relief until its purpose be fully accomplished, the action is still pending, within the meaning of the statute, until its decree is effectively enforced. The action of the defendants Hesse and Bushnell in issuing the stock, and that of their attorneys McCorkle and Bayne in accepting it as they did, with knowledge of the circumstances and the effect of such action upon the rights of the plaintiff Tisdall under the judgment of the court, could not be construed otherwise than as deliberate acts of contempt which have impeded and impaired and, for the time being, defeated the rights of the plaintiff. While there is not sufficient evidence to show, in the case of Bayne, that he advised the said action as attorney and was an actual party to the conspiracy to defeat the judgment, he was nevertheless perfectly familiar with the nature of the case and the history of the litigation preceding it. He knew that the plaintiff Tisdall had purchased a controlling interest in the corporation, and must have known that the effect of the transfer would tend to again deprive Tisdall of his control. As a lawyer he must have known that he could not lawfully take the stock in the manner in which it was given to him. The defendants Hesse and Bushnell and their attorneys Bayne and McCorkle are adjudged guilty of contempt, and directed to forthwith deliver up for cancellation and to cancel the 55 shares of stock issued as aforesaid; the said four persons to stand committed until such cancellation be effected. They are also fined in the sum of $250, for which sum they shall be jointly and severally liable.

Ordered accordingly.