Max Oppenheimer, Individually and Executor of Last Will and Testament of Hermine Oppenheimer, Deceased, Appellee, v. Wm. F. Chiniquy Company et al., Appellants.

Gen. No. 44,176.

Opinion filed June 21, 1948. Released for publication September 9, 1948.

WILHARTZ & HIRSCH, of Chicago, for appellants; SAMUEL E. HIRSCH, WARREN KRINSKY and JACK A. DIAMOND, all of Chicago, of counsel.

GOTTLIEB, SCHWARTZ & FRIEDMAN, of Chicago, for appellee; HARRY E. SMOOT, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

From a decree approving and confirming the findings of fact and conclusions of law of a master in chancery, and ordering defendants' to issue to Max Oppenheimer, individually, 231.465 shares of the stock of Wm. F. Chiniquy Co., and to Max Oppenheimer, as executor of the last will and testament of Hermine Oppenheimer, deceased, 71.832 shares of the stock of the same company, and granting plaintiff certain injunctive relief, defendants appeal.

The complaint, briefly stated, alleged that Max Oppenheimer and his late mother were owners of certain shares of stock of defendant corporation; that pursuant to a resolution of the board of directors the corporation notified Oppenheimer and his mother that they were entitled to apply for and purchase additional shares of stock in the corporation; that they were thereafter advised by letter as to the book value of the stock; that plaintiff and his mother exercised the options thus granted them but defendants wrongfully refused to consummate the transaction. The complaint also charged that the individual defendants were conspiring to deprive plaintiff of the control of the majority of the stock in the corporation in order to acquire control of the corporation for their own purposes. The complaint prayed that defendants be required to issue to plaintiff the stock to which he is entitled in his individual capacity and as executor of his mother's estate. The joint answer of defendants alleged that plaintiff and his mother had failed to exercise their option to procure additional stock in the corporation in accordance with the terms of the option and that they failed to tender the purchase price of the stock to the corporation prior to the time of the expiration of the option. The answer denied the charges of conspiracy made in the complaint.

The material facts in the case are not disputed. Defendants are Wm. F. Chiniquy Co., an Illinois corporation, and Mathew J. Betz, Kathryn A. Griffin and

Mark M. Baker, owners of stock in the corporation and members of its board of directors. The corporation is located in Chicago and is engaged in the ladies' millinery business. It has an authorized capital stock of 2,500 shares. Max Oppenheimer, individually, owned 725 shares of the capital stock of the corporation and Hermine Oppenheimer owned 225 shares. She died on October 24, 1945, and Max Oppenheimer was appointed executor of her estate. On August 6, 1945, the corporation held in its treasury 605 shares of stock. On that date, pursuant to notice, a special meeting of the board of directors was held. The entire board was present at the meeting.' The minutes of the meeting recite that the president stated that "the meeting was called for the purpose of considering the selling of the 605 shares of stock that are now in the treasury, to the stockholders of record of this date August 6th, 1945. The amount realized will be added to the bank account and will be a safeguard for the reconversion period, and this we consider a vital importance. Each stockholder entitled to purchase an amount in proportion to their present holding, at the estimated Book Value. All applications for the stock offered must be made to the Treasurer of the Wm. F. Chiniquy Co., K. A. Griffin before September 6th, 1945." The minutes also recite that "after a full discussion, the above resolution, on motion duly made, seconded and carried, was unanimously adopted." On the same date the following letter was sent to all stockholders:

"A special meeting of the Board of Directors of the Wm. F. Chiniquy Co., was held at the offices of the company, 1922 So. Halsted St., Chicago, Illinois, on the 6th day of August 1945, at the hour of ten o'clock A. M. pursuant to proper notice.

"All of the Board being present, the meeting was called to order by the President, Mr. M. J. Betz, and the Secretary, Kathryn A. Griffin, acted as such.

"The President, Mr. M. J. Betz stated the meeting was called for the purpose of considering the selling of the 605 Shares of stock that are now in the treasury to the stock-holders of record of this date August 6th, 1945. The amount realized will be added to the bank account, and will be a safe-guard for the re-conversion period, and this we consider a vital importance.

"Each stock-holder entitled to purchase an amount in proportion to their present holdings, at estimated book value.

"All applications for stock offered must be made to the treasurer of the Wm. F. Chiniquy Co., K. A. Griffin, before Sept. 6, 1945.

"Yours truly
"Mathew J. Betz"

On August 23, 1945, the following letter was sent to all stockholders:

"To the Stock-Holders of the Wm. F. Chiniquy Co. The Book Value of the Stock of the Wm. F. Chiniquy Co., from the Auditors report of June 1st., 1945, is $41.83 per share.

"Expiration date of Option Sept. 6th., 1945 as stated in previous letter."

On September 5, 1945, Max Oppenheimer sent the following letter to the Company:

"In accordance with your letter dated August 6, 1945, executed by Mathew J. Betz, notifying the undersigned, Max Oppenheimer, of his right to purchase his proportion of the 605 shares of stock that you state are now held in the treasury of the Company, and in accordance with your letter dated August 23, 1945, advising the undersigned that the book value of the stock of the Company as of June 1, 1945, is $41.83 per share, please be advised that the undersigned does hereby exercise his option to purchase 231.465 shares of Wm. F. Chiniquy Co. stock.

"The undersigned is prepared to pay for such stock immediately, and will pay for same when the stock is

ready for delivery and when the other stockholders who have exercised their options have been called upon to pay for their stock.

"Yours very truly,

"Max Oppenheimer"

On the same date Hermine Oppenheimer sent the Company a letter similar to the one sent by Max Oppenheimer save that she exercised her option to purchase 71.832 shares of the stock. Defendant corporation also received letters from George R. Griffin, Catherine A. Griffin, Kathryn A. Griffin and James S. Luck, stockholders, in which each subscribed to his or her respective proportional share of the stock, but Luck was the only subscriber who sent a check with his subscription. On September 7, 1945, there was a meeting of the board of directors at which were present Mathew J. Betz, Mark Baker and Kathryn A. Griffin, who constituted the entire board. The president stated that the meeting was called for the opening of the options for stock of the Wm. F. Chiniquy Co., as per letters dated August 6, 1945, and August 23, 1945; that "upon opening options find James S. Luck applied for 23 shares of stock in the Wm. F. Chiniquy Co., with check attached." Thereupon the following resolution was unanimously adopted:

"The Board of Directors, as per their letters of August 6, 1945 and August 23, 1945, deposited James S. Luck's check for the account of the Wm. F. Chiniquy Co., at the First National Bank of Chicago, stock certificate to be issued to James S. Luck for 23 shares."

It is conceded that treasury stock was delivered only to Luck. On September 20, 1945, the Oppenheimers, through their attorneys, wrote defendant corporation notifying it that the Oppenheimers were prepared and ready to pay for the respective shares due them immediately upon being advised that the stock is ready for delivery, and that unless they are advised by Tuesday, September 25, that said stock is ready for de-

livery an action will be filed in behalf of the Oppenheimers. Defendants concede that on October 16, 1945, Oppenheimer called at defendant Company's office and demanded delivery of the stock to which he and Hermine Oppenheimer were entitled and tendered payment therefor. On October 19, 1945, Mr. Betz, president of the Company, advised plaintiff that counsel for defendant corporation had advised him that the tender of payment was too late and that, therefore, delivery of the stock to plaintiff was refused. The complaint alleges that on October 16, 1945, plaintiff demanded delivery of the stock to which he and his mother were entitled and tendered payment therefor. As this allegation was not denied by defendants in their joint answer it stands admitted. On the hearing before the master Oppenheimer testified that he was prepared to place with the master in chancery a check covering the cost of the stock, but counsel for defendants objected to the tender on the ground that it was made too late. During the examination of Mr. Betz the following occurred: "Q. Mr. Betz, has any part of the 605 shares of Chiniquy stock mentioned in the resolution of the board of directors of August 6, 1945, and in the letters of August 6th and 23rd, 1945 from Chiniquy to the shareholders, been disposed of? A. Yes, sir. Q. What part of it? A. Twenty-three shares to Mr. Luck. Q. Has any of the balance, after subtracting the twenty-three shares, been disposed of? A. No, sir. Q. It is still with the company? A. It is in the treasury, yes, sir. Q. And available for disposition? A. Yes."

Defendants contend that "the Oppenheimers failed to comply with the terms of the offer by not tendering payment for the treasury stock on or before September 6, 1945"; that "the record discloses that the first tender of payment made by the Oppenheimers was on October 16, 1945, almost six weeks after payment was due"; that "to allow the directors to accept payment

by the Oppenheimers more than one month after the date set for the other subscribing shareholders, would operate as a fraud on those shareholders. It was for this reason, and this reason alone, that the defendants chose not to issue the stock to the Oppenheimers." Plaintiff contends that under the law and the facts of this case the reason interposed by defendants for their refusal to deliver the stock is not a valid one.

In our opinion, *Sommer v. Armor Gas & Oil Co.*, 128 N. Y. S. 382, decides this appeal, and adversely to defendants. We quote the opinion in that case (pp. 382, 383):

"POUND, J. Plaintiff, a stockholder in defendant corporation, institutes this action to compel the defendant to issue and deliver to her a certificate for nine shares, of the par value of $25 a share, of its capital stock, being her allotted share of an increase of such stock. The corporation defends, on the ground that the shareholders were notified to pay for their allotted shares of the new or increase stock within a fixed, reasonable time, and that plaintiff failed to pay within the time fixed, and has so lost her right thereto. The corporation still holds the stock, unissued or otherwise disposed of, except that the directors on September 24, 1910, voted 'to retain same as treasury stock.'

"The material facts are not in dispute. Plaintiff had due notice of a meeting of stockholders on September 12, 1910, at which it was voted to increase the capital stock. At such meeting she, with the other stockholders, was allotted shares in proportion to her original holding at par, and was duly notified 'to pay for same on or before September 22, 1910,' pursuant to resolution passed in such stockholders' meeting. But no action was taken and no notice was given that failure to pay within such time would forfeit her right to take the stock. Shares of the new stock were actu-

ally paid for by old stockholders as per allotment as late as September 24, 1910; the money being received by the corporation without protest and the new shares issued.

"Plaintiff made no offer to pay for her shares until October 4, 1910, when she made a demand on the secretary of the defendant, and again on October 8, 1910, when she made a further demand at a directors' meeting. Refusal was based on the ground, not that the **corporation** had disposed of the stock, but that plaintiff had lost her right to take the shares by failure to pay for the same on or before the date fixed in the resolution above referred to. She was prepared to pay, and offered to pay, for the stock on October 8th; but she made no formal tender of the amount.

"Plaintiff's right as an old stockholder to take the new or increased stock at par was an important property right, 'which the courts will go very far to protect,' in the absence of laches or acquiescence. *Stokes v. Continental Trust Co.,* 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969. In *Dousman v. Wisconsin, etc., Co.,* 40 Wis. 418, 421, it was held that a court of equity would compel a corporation to issue to every stockholder his proportion of new stock, on the ground that:

" 'He has a right to maintain his proportionate interest in the corporation, *certainly as long as there is sufficient stock remaining undisposed of by the corporation.'*

"The right of existing stockholders to subscribe for increased capital stock must be exercised within a fixed or reasonable time, and mere failure to exercise such right within such time bars the stockholder *from contesting a disposition of the stock to some one else—* nothing more. It seems that defendant might, after September 22d, and before plaintiff's demand, have disposed of her shares, at par or otherwise, without

incurring any legal liability by reason thereof. But, as said by LORD HERSCHELL in *James v. Buena Ventura, etc.* [1896] 1 Chan. 456:

" 'The shares are still at their [the company's] disposal, and I do not see that they have in any way *acted to their prejudice on the assumption that the shares would not be applied for.'*

"Until plaintiff declined to take the shares, or consented to the action of the defendant in withholding them from her, plaintiff was entitled to demand and receive her shares on payment therefor, as long as the new stock remained undisposed of. The fact that the new shares are now worth more than the old shares were worth merely enhances the value of plaintiff's right.

" . . .

"Plaintiff is entitled to judgment, with costs. Decision accordingly."

■  The judgment in that case was affirmed by the Supreme Court, Appellate Division, Fourth Department, 131 N. Y. S. 1144, and the judgment of the latter court was affirmed by the Court of Appeals, 207 N. Y. 739. In the instant case the subscribers were not notified to pay for the stock at any particular time and it is conceded that on October 16, 1945, there was a demand made for all of the stock and a tender of payment made. The stock in question is still in the treasury of the corporation and "available for disposition." We are in full accord with the reasoning and judgment in the *Sommer* case, which was cited by plaintiff in his brief, but defendants failed to file a reply brief.

The decree of the Superior Court of Cook county is affirmed.

*Decree affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.