WATERS v. HORACE WATERS & CO. et al.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. CORPORATIONS (§ 110*)—RIGHT OF ACTION—ISSUE OF STOCK.

    A corporation has no right of action because shares of its stock are sold to a person without being first offered to holders of its stock, though this contravenes rights of such holders, whether under the original agreement of persons pursuant to which the corporation was formed or otherwise.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 461; Dec. Dig. § 110.*]

2. CORPORATIONS (§ 158*)—ULTRA VIRES—SALE OF STOCK.

    A corporation having duly authorized an increase of its stock, a sale from the unissued portion of said increase held in its treasury is not ultra vires, though in contravention of a right of shareholders to be allowed a first opportunity to buy.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 158.*]

3. CORPORATIONS (§ 110*)—FRAUD ON CORPORATION—ISSUE OF STOCK.

    Evidence in an action by a stockholder on behalf of the corporation for cancellation of shares of its stock *held* to show the issue of the stock was not a fraud on the corporation.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 110.*]

4. CORPORATIONS (§ 202*)—ACTION BY STOCKHOLDER FOR CORPORATION.

    A stockholder cannot maintain an action on behalf of a corporation, where the facts constitute no cause of action in its behalf, but, if at all, one in his behalf.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 778; Dec. Dig. § 202.*]

Appeal from Special Term, New York County.

Action by Fanny L. Waters against Horace Waters & Co. and others. From a judgment adjudging the issuance of the three shares of stock of said corporation illegal and a fraud on it and its stockholders, and decreeing that they be delivered to it for cancellation, and that they be forthwith canceled, certain defendants appeal. Reversed, and complaint dismissed.

———————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

H. Aplington, for appellant Kohn.

Sanborn & Sanborn (David Leventritt, of counsel, and N. B. Sanborn, on the brief), for other appellants.

Horace Waters & Co., White, Sanborn & Scholz, and Samuel T. White, pro se.

Parker, Hatch & Sheehan (Edward W. Hatch, of counsel), for respondent.

CLARKE, J. Prior to the month of July Horace Waters, now deceased, William H. Alfring, now deceased, and the defendants Samuel T. White and Timothy Leeds Waters, were copartners engaged in a mercantile and manufacturing business in the city of New York under the name and style of "Horace Waters & Company." They entered into a written agreement under their hands and seals dated July 15, 1886, by which they agreed to form a corporation by the name of Horace Waters & Co., with a capital stock of $150,000. Pursuant to the agreement, the defendant Horace Waters & Co. was duly organized as a corporation according to the laws of the state of New York, and said copartners were the incorporators thereof. The assets of the firm were assigned to the said corporation, and certificates of stock were thereafter duly issued to the said incorporators in payment for their several interests therein, to wit, to Horace Waters, 530 shares, to Alfring, 198 shares, to White, 141 shares, and to Timothy Leeds Waters, 141 shares, of the par value of $100 each. Said agreement provided, among other things, that the parties thereto should immediately on the receipt thereof "invest any dividends and any interest on undrawn dividends and any amounts paid to them by said Horace Waters as hereinafter provided in the purchase from the corporation of its capital stock for so long as and whenever it has any unissued either of its original stock or of any increase thereof"; that, "in all cases of the purchase of unissued stock of the corporation, each of the parties hereto shall be entitled during the lifetime of the said Horace Waters to purchase an equal share thereof and an equal share of any shares which any other party hereto may be entitled to take but shall elect not to take, and after the decease of said Horace Waters each of the other parties hereto, and the executor, trustee, and legatees of the said Horace Waters, shall be entitled to purchase all such shares of stock in the proportion of the number of shares then held by the said several parties, respectively," and the said Horace Waters covenanted and agreed that:

"So long as he should live and each of the other parties hereto shall live and in good faith observe all the conditions, agreements, and covenants herein contained to be kept, performed, or observed by them, and so long as he shall receive his said salary of $175 per week, he will pay to them and each of them out of any dividends which may be declared and which he may from time to time receive on his said stock a sum of money which added to the dividends then declared on the stock then held by them respectively shall equal one-quarter of the dividend then declared."

115 N.Y.S.—28

In October, 1886, a dividend was declared by the said Horace Waters & Co., and, pursuant to the agreement of July 15, 1886, five shares of the capital stock were thereupon sold and issued to each of the incorporators, and on January 25, 1887, a further dividend was declared and 37 shares of the capital stock of the said corporation were then sold and issued to each of the said incorporators, after which the capital stock of the corporation was held and owned as follows, to wit, Horace Waters, 572 shares; William H. Alfring, 240 shares; Timothy Leeds Waters, 183 shares; and Samuel T. White, 183 shares. William H. Alfring died in the month of February, 1887. After the dividend of January 25, 1887, and prior to April 22, 1893, various stock dividends were declared for which stock was issued in equal amounts to the stockholders, except that, after the death of William H. Alfring, the dividends on his stock were paid in cash to his personal representatives. The whole of the 1,500 shares of authorized capital stock having been issued and disposed of in the month of February, 1890, the stockholders duly authorized an increase in the capital stock from $150,000 to $250,000. Horace Waters died April 22, 1893, and at the time of his death there had been sold and issued, as provided in said agreement, $211,500 of the authorized capital stock of $250,000 which was held as follows: Horace Waters, 1,007 shares; Samuel T. White, 554 shares; Timothy Leeds Waters, 554 shares. Horace Waters left a will which was duly probated. He bequeathed to his son, the defendant Timothy Leeds Waters, and to the plaintiff, Fanny L. Waters, the wife of Timothy, one-half of his shares in the capital stock of Horace Waters & Co., which he directed his executor to assign and transfer to them in specie, to be divided equally between them share and share alike, and declared with respect to said shares that the same were bequeathed subject to the conditions of the agreement hereinbefore referred to, and on the condition that the agreement, so far as it related to his personal representatives or purported to bind them, should be fully carried out and observed by the legatees, executor, and trustee. Horace Waters by his will appointed the defendant Noel B. Sanborn executor of and trustee of the trust created therein and thereby, and he duly qualified and entered upon the discharge of his duties as such, and is still so acting.

On May 3, 1893, the defendants Waters and White each sold and transferred one share of stock to Alexander Hamilton, for which the said Hamilton paid cash at par, and was thereupon elected a trustee of said company. In July, 1896, the defendants Waters and White each sold and transferred one share to I. C. Swazey, who was thereupon elected a trustee. The shares of stock were sold to Hamilton and Swazey for the purpose of qualifying each of them to fill the office of trustee. In April, 1898, Sanborn, as executor of Horace Waters, held 1,007 shares of the stock for distribution under the will, and, as these shares could not be divided without leaving fractions, he sold and transferred to the defendant Waters two shares, and to the plaintiff Fanny L. Waters one share belonging to the estate of the said testator, which sale was made at private sale, and without giving any notice to the other stockholders of the corporation. White had notice of such sale after the same was made and acquiesced there-

in. On April 22, 1898, Sanborn transferred and distributed the remaining 1,004 shares of stock by assigning and transferring to the defendant Waters 251 shares thereof, and to the plaintiff Fanny L. Waters 251 shares thereof, and to himself as trustee for Horace Waters, Jr., 251 shares thereof, and as trustee for Josie K. Waters, 251 shares thereof, and the same were duly transferred on the books of the company, and have been held and owned in the names of the respective transferees at all times since the transfer thereof. After such transfers, the stock of the corporation was held and owned as follows: T. Leeds Waters, 805 shares; Fanny L. Waters, 252 shares; Noel B. Sanborn, as trustee for Horace Waters, Jr., 251 shares; Noel B. Sanborn, as trustee for Josie K. Waters, 251 shares; Samuel T. White, 552 shares; Alexander Hamilton, 2 shares; and I. C. Swazey, 2 shares. On September 20, 1899, at the request of the defendant White, Swazey sold and transferred one of his shares to the defendant Waters and one to the defendant White, and thereupon the said T. Leeds Waters became the owner of 806 shares, and the plaintiff Fanny L. Waters of 252 shares, the two together owning 1,058 shares, while all the other stockholders owned 1,057 shares.

The defendants Waters and White have been trustees and directors of Horace Waters & Co. ever since its organization, and since the death of Horace Waters T. Leeds Waters has been the president and treasurer, and the defendant White has remained the vice president and secretary of the corporation. Since July, 1905, the trustees have been T. Leeds Waters, Samuel T. White, Noel B. Sanborn, and Charles Scholz, the defendants in this action. On February 12, 1900, the defendant Waters, acting as president and treasurer, and the defendant White, acting as secretary of said corporation, sold to Alexander Hamilton three shares of the then unissued capital stock, and issued and delivered to him a certificate therefor, which said stock was so issued and delivered at par and without giving the other stockholders of the corporation an opportunity to subscribe for or to make the same or a proportional part thereof. At the time said shares of stock were sold and issued to Hamilton he had for many years been in the employ of Horace Waters & Co. as its cashier, and for nearly seven years had been and then was one of the trustees thereof. At the time of said issue, the defendants Waters, White, and the said Hamilton were the only trustees of the corporation, and all of them assented to and participated in the issue of the stock to Hamilton, but no formal resolution was passed and entered authorizing such issue. Hamilton died in July, 1901, and at the time of his death he was the owner of five shares which stood in his name on the books of the corporation. After the death of Hamilton, the defendant White purchased from his administratrix said five shares of stock, paying her therefor $500, the par value thereof, which sum be borrowed from the corporation through its treasurer, the defendant Waters, and such stock was duly assigned and transferred to him by said administratrix, and was thereafter transferred on the books of the corporation to said White, but no new stock certificate therefor was issued. White repaid to the corporation the $500 so loaned to him. From the time Alexander Hamilton became the own-

er of the three shares said shares have been regularly voted at stockholders' meetings at which the defendant Waters, who is the plaintiff's husband, and who at the election in July, 1905, held her proxy as a stockholder, was present and voted, and dividends have been paid thereon by the said Waters, as treasurer of the defendant corporation. At a meeting of the trustees held on October 17, 1905, at which the defendants Waters, White, Sanborn, and Scholz were present, a resolution was introduced, which, after reciting the issue of stock of the corporation on various occasions from the year 1886 to the year 1901, and which included in express terms the issue of said three shares of stock to Alexander Hamilton on the 12th day of February, 1900, provided among other things as follows:

"Resolved, that we do hereby ratify, approve and confirm the said several issues of stock, and each and every one of them, and do hereby direct and declare that each of said issues of stock, shall have the same force and effect and be of the same validity as if the board of trustees of this company had by a formal resolution, entered in the minutes, authorized and directed each of the said issues of stock before the issue thereof."

The defendant Waters protested against such action, and asked that the matter be deferred, which request was denied, and the resolution was adopted by the votes of a majority of the trustees; said Waters voting in the negative. In November, 1905, the defendant Samuel T. White transferred three of the shares of stock which had formerly been issued to Alexander Hamilton to the defendant Solomon H. Kohn at their par value of $100 each. The plaintiff, who is the wife of the defendant Waters, and the owner of 252 shares out of the 2,118 issued, brings this action in a representative capacity to have the three shares of stock issued to Hamilton in 1900 surrendered and canceled. She alleges that the stockholders, by virtue of their relation as stockholders and of the agreement, were and are legally and equitably entitled to subscribe for and purchase any unissued stock in preference to others, and the same could not be lawfully issued to others than said stockholders without their express consent and sanction; that without the authority, knowledge, or consent of the plaintiff or of any stockholder, except themselves, the defendant White acting as secretary and the other officer or officers (which included her husband), whose duty it was to authenticate its certificates of stock, acting in bad faith and in disregard of the legal and equitable rights of the stockholders, wrongfully, unlawfully, and fraudulently, and in violation of their, and each of their obligations, as trustees, sold and issued three shares of stock to Alexander Hamilton without giving the other stockholders an opportunity to subscribe for or to take the same; that such sale was done at the instigation of the defendant White, and to his nominee, and the issue of such stock was a part of a scheme and plan on the part of White to obtain control of the corporation, and was a fraud upon the corporation and its stockholders; that, in pursuance of his fraudulent scheme and plan to obtain control of the corporation, the defendant White caused the resolution to be introduced at the meeting of the trustees which ratified and confirmed the several issues of stock which had been made; that said White threatens and intends

to procure the ratification by the board of trustees of the fraudulent, wrongful, and unlawful issue of said certificates of stock to said Hamilton, and to procure the transfer thereof to the defendant Kohn on the books of the corporation, and the issue to him therefor which will perpetuate the fraud upon the corporation and its stockholders heretofore perpetrated by and through the defendant White and the said trustees, and will do so, unless restrained by the order of this court, to the irreparable injury and damage of said corporation and its stockholders, for which injury and damage there is no remedy at law; that the defendant corporation is still under the control of the same trustees, a majority of whom voted to ratify and confirm the alleged fraudulent issue of stock, and whose further acts in that behalf it is sought to restrain in this action, and it would therefore be useless to ask them to bring this action in the name of the corporation; wherefore, the action is commenced and will be prosecuted by this plaintiff on behalf of the defendant corporation and for the benefit of all the stockholders thereof, joining the corporation as a party defendant. Reduced to its ultimate analysis, a stockholder brings a representative action to have canceled three shares of treasury stock which were issued at par to an old employé and officer of the corporation, in order better to insure his retention in the service and interest in the company, upon the ground that she ought to have been offered an opportunity to subscribe for her proportionate part of said three shares, and that the failure to give her that opportunity constituted a fraud upon and irreparable damage to the corporation, and thereupon invested it with the right to bring suit to cancel said shares, for which it had received full value.

It is difficult to perceive what right of action the corporation has under the circumstances disclosed, or what interest it has as to who shall own its stock, or what fraud has been perpetrated on it by the failure to offer one of its stockholders an opportunity to subscribe to her proportional part of three shares issued for value to another stockholder. In so far as plaintiff claims any rights under the original agreement of the four copartners of the old firm of Horace Waters & Co. as a result of which agreement the corporation was incorporated, it is enough to say that neither she nor the corporation was party to that agreement, that said agreement only bound the original parties thereto, and that in no event could the corporation, as such, be affected thereby. And so of any rights claimed under the will of her father by which she acquired title to certain shares of the stock of the corporation. That will spoke only to the executor and trustee thereunder, and governed only the legatees named therein. The corporation as such was not affected or controlled thereby. Whatever rights or claims plaintiff may assert or may have under the agreement and from the will are absolutely personal to her to be asserted against the individual parties to said agreement, or taking or acting by virtue of said will, and are not to be asserted in such an action as that at bar, which depends entirely for its status in court upon the proposition that rights of the corporation are being asserted and remedies asked for on its behalf.

The complaint and brief of the respondent reek with the word "fraud." Fraud is abhorrent, and, if a court of equity finds fraud, it is swift to deal with it. To characterize transactions as fraudulent do not make them such. Unauthorized acts are not necessarily fraudulent. Illegal acts are not per se fraudulent. Respondent argues that a stockholder has an inherent vested right to have offered to him an opportunity to take a proportionate share of stock issued otherwise than for property. Three shares were issued to Hamilton and paid for at par. She was not offered the opportunity to obtain three-eighths of one of those shares. Therefore the issue of the three shares was fraudulent. It was a fraud on the corporation. The corporation has the right to bring an action to cancel said shares as fraudulently issued. The corporation is in the control of the trustees who issued the shares. It is useless to ask it to bring such suit. Therefore, as a stockholder in a representative capacity, to rectify the wrong done to the corporation by the fraudulent issue, she brings suit for the benefit of the corporation.

Stockholders' suits of a representative character have been often brought and often sustained. The rules governing them have been pretty well formulated. The learned counsel for the respondent states in his brief:

"There are three classes of stockholders' wrongs which the corporation is ordinarily the party to remedy, viz., wrongs arising from a breach of trust by directors or a majority of the stockholders, and these are (1) fraudulent acts; (2) ultra vires acts; (3) negligence of corporate directors."

We may dismiss the second class, ultra vires acts. These three shares of stock are not overissued stock. The corporation had so far back as February, 1890, duly authorized an increase in its capital stock, and it was from the unissued portion of said increase held in its treasury that these three shares were issued. The cases, having to do with an overissue of stock, therefore have no application.

The third class of cases may likewise be dismissed from consideration, where a right of action accrues to a corporation for damage and loss occasioned to it by the negligence of its trustees and officers in the management of its affairs. No negligence is alleged or proved, and no damage resulting therefrom.

It follows that the sole basis of the action must be the fraud which is so elaborately set forth. It appears that in this small business corporation, formed in succession of and to carry on the business of a preceding copartnership, of which there were originally but four stockholders, and at the time of the transaction complained of but five stockholders and three trustees, the directors had not been in the habit of holding formal meetings for the purpose of authorizing the issuance of stock; that between April 20, 1887, and January 25, 1890, there had been 27 separate instances of the issuance of stock by the officers of the company without a formal vote of its trustees. These three shares of stock were issued in precisely the same way that the prior issues had been made; that is, by the agreement of Waters, the president, and White, the secretary, who signed and sealed the certificate. The allegation that the issue of such stock was a part of a scheme and plan on

the part of White to obtain control of the defendant corporation and was a fraud upon the defendant corporation is entirely unsupported by proof. On the contrary, it is affirmatively disproved. At that time the plaintiff and her husband held 1,058 shares, Sanborn, as trustee of Horace Waters, Jr., and his wife, held 502 shares, White, 553 shares, and Hamilton, 2 shares, completing the total of those issued. There never had been any question or any contest as to the control of the corporation. Hamilton had been for many years connected with the company, which owed him at the time about $1,600.

White testified:

"We desired to have Mr. Hamilton retained. His services were valuable to the company, and we desired also to have his money retained, and the suggestion was that we give him stock for that. * * * He said that he could buy three shares if we could sell him that. He was anxious to make himself as well connected with the company as he could. I talked with Mr. Waters about it in a general way, and Mr. Waters was agreeable to it, or was favorable to it, and Mr. Hamilton wanted it, and that is how it came to be issued. * * * We desired to sell Mr. Hamilton stock in order to fasten him or identify him with the business very much. He was very useful to us. He was a man of good judgment, and his services were very valuable. Mr. Waters felt in that regard even more than I did. He was sort of a protégé of Mr. Waters. Mr. Hamilton paid for this stock by applying $300 of the indebtedness that we owed him. That indebtedness was for labor done."

Mr. Waters testified that he consented to the issue of these three shares of stock, and said:

"I signed the certificates, and Mr. Hamilton paid for the three shares of stock, and that money came into my hands as treasurer. Those three shares of Hamilton's were voted on at every annual election after that. I did not object to its being voted on, and dividends were paid on it."

Every stockholder has acquiesced in that sale of the three shares of stock and in the payment of the dividends thereon, with the exception of the plaintiff, and the trustees, before the institution of this suit, adopted a resolution expressly ratifying the said transaction, as well as the 26 other issues of stock heretofore alluded to. The plaintiff's husband, who held her proxy, acquiesced and participated in the original sale and in the successive payments of dividends. Therefore the corporation and all of its stockholders, with the single exception of the plaintiff, have ratified the transaction. It seems to me clear that the corporation cannot now bring an action to cancel said stock upon the ground of fraud. If the corporation has no such cause of action, the plaintiff, suing as its representative and in its behalf, evidently has none.

We must therefore, as it seems to me, eliminate the only ground upon which it can be claimed in this case that a cause of action exists in favor of the corporation, as, while the complaint alleges such grounds sufficiently to be demurrer proof, there is no evidence in the case to sustain such allegations. Nor, indeed, does the learned court find fraud as a matter of fact. In his conclusions of law he does say "that the issuing of the three shares of capital stock of the defendant Horace Waters & Co. to Alexander Hamilton was illegal and a fraud upon the corporation, and upon its stockholders," but that conclusion of law is not sustained by his findings of fact nor by the evidence.

This brings us to the only basis upon which the plaintiff can claim any cause of action, and that is that she was not given the opportunity at the time of the issuance of these three shares of stock of purchasing her proportionate share thereof, to wit, three-eighths of one share. For this she relies upon Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969; but that was an action brought by a stockholder to compel his corporation to issue to him at par such a proportion of an increase made in its capital stock as the number of shares held by him before such increase bore to the number of shares originally issued, and, in case such additional shares could not be delivered to him, for his damages in the premises. That was an individual action against the corporation, asserting the right of the plaintiff to damages from the corporation because of an act done by the corporation. The action at bar is one asserted to be for the corporation, to disaffirm an act done by the officers thereof, and to cancel the stock issued by them, upon the ground of a fraud committed upon the corporation and to its damage. We find nothing in the Stokes Case authorizing such an action as this.

We reach the conclusion, therefore, that the judgment appealed from should be reversed, and, as upon the facts found, most of which are conceded by stipulation entered into between the parties, there is no cause of action in behalf of the corporation, and therefore none in the plaintiff in the representative capacity in which she sues, the complaint should be dismissed, with costs and disbursements to the appellant. All concur.