(164 App. Div. 493)

ARCHER et al. v. HESSE et al. (No. 6400.)

(Supreme Court, Appellate Division, First Department. December 4, 1914.)

1. CORPORATIONS (§ 72*)—STOCK—RIGHT TO ISSUE.

Where, in obedience to a decree of court, treasury stock of a corporation, which was improperly issued, was returned, and the certificate canceled, the corporation may thereafter issue such treasury stock for any lawful purpose, provided full value was received, in accordance with Stock Corporation Law (Consol. Laws, c. 59) § 55.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 72.*]

2. CONTEMPT (§ 20*)—CIVIL CONTEMPT.

Where a judgment required directors of a corporation to surrender treasury stock improperly issued, and this was done, it is not a contempt for the directors thereafter to issue and attorneys to receive the stock as surrendered in payment for services rendered the corporation; the judgment not prohibiting the reissue of the stock, although authorizing the plaintiffs to apply for subsequent orders.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. § 20.*]

3. CONTEMPT (§ 20*)—DISOBEDIENCE OF JUDGMENT.

Where stockholders of a corporation instituted an action for its benefit to require directors to return stock certificates for cancellation, a judgment directing the return of such certificates was solely for the benefit of the corporation; and the fact that the certificates were thereafter issued in such manner that the successful suitors were unable to gain control of the company is no ground for a contempt order, where the corporation was not injured.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. § 20.*]

4. CONTEMPT (§ 63*)—CIVIL CONTEMPT—PENALTIES—PAYMENT.

Where stockholders of a corporation procured an order compelling directors to return stock certificates for cancellation, and the certificates were thereafter issued in contempt of the judgment, an order punishing the directors for contempt should direct any fine imposed to be paid to the corporation, and not to the stockholders.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 195, 197–201; Dec. Dig. § 63.*]

5. CORPORATIONS (§ 159*)—STOCK—TREASURY STOCK—DISPOSITION.

A corporation may dispose of its original unissued authorized capital stock for any lawful purpose it sees fit; the rule entitling existing shareholders to an opportunity to subscribe to it in such proportions as the stock they then hold bears to the total amount of the outstanding stock not applying, as in case of new issues of stock to raise funds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 448; Dec. Dig. § 159.*]

Appeal from Special Term, New York County.

Action by George F. Archer and another against G. Emil Hesse and Cornelius J. Bushnell, impleaded with Turbo-Electric Construction Company. From an order adjudging the first-named defendants and Henry M. McCorkle and another guilty of contempt, they appeal. Order reversed, and motion to punish defendants denied.

See, also, 149 N. Y. Supp. 1069.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Louis Marshall, of New York City, for appellant Bayne.
John R. Abney, of New York City, for appellant McCorkle.
A. D. Palmer, of New York City, for appellant Bushnell.
Walter L. McCorkle, of New York City, for appellant Hesse.
Andrew J. Shipman, of New York City, for respondent Tisdall.
William Byrd, of New York City, for respondent Archer.

McLAUGHLIN, J. This action was commenced by the plaintiff Archer, on behalf of himself and all other stockholders of the Turbo-Electric Construction Company, a domestic corporation, to procure a judgment adjudging void a resolution of its board of directors, and the issuance of 197 shares of its preferred capital stock to the defendant Hesse in pursuance thereof, and decreeing that the same be declared invalid and surrendered to the corporation for cancellation. At the time the resolution was passed, and the stock issued, the defendants Hesse and Bushnell constituted a majority of the board of directors, and with the corportion they were made defendants in the action. After the action was commenced, Archer transferred his stock to the plaintiff Tisdall, who was thereupon joined as a party plaintiff. Each defendant answered separately, putting in issue the material allegations of the complaint. The issues raised by the pleadings came on for trial at Special Term; the corporation being represented by its attorney, the appellant McCorkle, and, with the other defendants, by appellant Bayne as counsel. The trial lasted five days, and at its conclusion the court rendered a decision upon which judgment was entered in favor of the plaintiffs, and against the defendants, for substantially the relief prayed for in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the complaint. The judgment decreed that the resolution, and the issue of 197 shares of stock in pursuance thereof, were null and void. It also directed the defendant Hesse to at once surrender to the corporation for cancellation the certificate representing such shares.

In pursuance of the judgment, on the 18th of March, 1914, Hesse surrendered to the corporation the certificate for the 197 shares, and the same was, on that day, actually canceled. A formal resolution canceling the same was passed by the board of directors two days later. After such cancellation, the corporation had 197 shares of its authorized preferred capital stock unissued. The appellants McCorkle and Bayne, not having been paid for the services rendered by them to the corporation in the action, and it not having funds to pay them, agreed to accept in payment certain shares of the preferred capital stock—McCorkle 40 and Bayne 15 shares. A resolution was then passed, Hesse and Bushnell voting in favor of and Archer against it, authorizing the issuance of such stock and directing the proper officers to execute a certificate in the name of each for the amount which they had agreed to accept. Certificates were so issued, delivered, and receipted for. On the day following the issue of this stock, the plaintiffs obtained from the learned justice who tried the action an order to show cause, returnable before him, why Hesse, Bushnell, McCorkle, and Bayne should not be punished for a contempt of court—the two former for issuing and delivering, and the two latter for receiving, the certificates representing such stock. Upon the return of the order they were each adjudged guilty of contempt, and for their misconduct fined the sum of $250, which was directed to be paid to the plaintiff Tisdall within 10 days after service of a copy of the order and notice of entry upon the attorneys for the plaintiffs; McCorkle and Bayne were directed to deliver up for cancellation the certificates of stock which they had respectively received; Hesse and Bushnell, as officers of the corporation, were directed to cancel the same; and for a failure to do as directed they were ordered committed to the jail of the county, there to be detained until the order had been complied with. Each of the parties adjudged guilty of contempt separately appeals.

[1, 2] The facts above recited demonstrate, as it seems to me, clearly and conclusively, that the order appealed from must be reversed. The action was a representative one. It was brought for and on behalf of the corporation, and no one else. The plaintiffs had no personal interest in it, or the judgment rendered therein, other than that common to all the stockholders. The judgment decreed the issue of the 197 shares to Hesse to be null and void, and directed him to surrender to the corporation the certificate for cancellation. He did as directed, and the judgment thereupon was satisfied in that respect. After the certificate had been surrendered and canceled, the corporation had 197 shares of authorized preferred stock which had not been issued, and it could thereafter issue the same, or any part of them, for any lawful purpose, because the judgment did not enjoin a reissue. It could issue the same, provided full value were received, for services rendered, property purchased, or money paid. Section 55, Stock Corporation Law. It is true the judgment contained a provision that the plaintiffs,

or either of them, might apply from time to time at the foot of the judgment for further directions or instructions; but, at the time the motion was made to punish for contempt, no such application had been made. Before one can be punished for contempt in violating the provisions of a judgment, or the terms of an order, it is necessary that the mandate alleged to have been violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it has been violated. Ketchum v. Edwards, 153 N. Y. 534, 47 N. E. 918.

[3, 4] It may be that the issue of the 55 shares to McCorkle and Bayne transfers a majority of the stock from one set of stockholders to another, or prevents Tisdall obtaining a majority; but this does not concern the corporation. It has no interest in who holds or controls a majority of the stock; indeed, its only concern is that its business and affairs shall be honestly managed for the benefit of all the stockholders. The action was brought by the plaintiffs as stockholders for the benefit of the corporation, since those who had committed the wrong were in control thereof, and would not permit the corporation itself to bring it. The judgment rendered was solely for its benefit, and when the 197 shares issued to Hesse had been reclaimed, the purpose of the action was accomplished, and the judgment satisfied. This seems to have been lost sight of by the learned justice sitting at Special Term in punishing the appellants for contempt. That order recites that the acts of the appellants were "calculated to and actually did defeat, impair, impede, and prejudice the rights and remedies of * * * Edward W. Tisdall herein secured to him by the said judgment," and by reason of that fact the appellants were directed to pay, not to the corporation, but to him personally, $250. Tisdall personally had no "rights and remedies * * * secured to him by the said judgment." He had no right or interest in the judgment, other than that common to all the stockholders. Waters v. Waters & Co., 130 App. Div. 678, 115 N. Y. Supp. 432, affirmed 201 N. Y. 184, 94 N. E. 602; Hay v. Brookfield, 160 App. Div. 277, 145 N. Y. Supp. 543. The fine, even if properly imposed, should have been directed to be paid to the corporation, since it was the only one injured.

[5] But it is urged that the issuance of the stock to McCorkle and Bayne was unlawful, and therefore the order may be sustained upon that ground. What is claimed in this respect is that such stock was "unissued authorized capital stock of the company, and before it could be issued lawfully every existing stockholder of the company was entitled to an opportunity to subscribe to it in such proportions as the stock he then held bore to the total amount of stock then outstanding." I do not understand this to be a correct statement of the law. A corporation may use its original unissued authorized capital stock for any legitimate or lawful purpose it sees fit, and the authorities cited are not to the contrary. Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, 12 L. R. A. (N. S.) 969, 9 Ann. Cas. 738; Waters v. Waters & Co., supra. Before making such use, it is not obligated to give to existing stockholders an opportunity to purchase. It is only when the capital stock is increased by the issue of new shares that each

holder of the original stock has a right to subscribe for and demand from the corporation such a proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase. In that case the rule simply applies when the new stock is issued for money only, and not to purchase property necessary for the purposes of the corporation, or to effect a consolidation. Stokes v. Continental Trust Co., supra; Waters v. Waters & Co., supra.

The order appealed from, therefore, is reversed, with $10 costs and disbursements, and the motion to punish appellants for contempt denied, with $10 costs. All concur.