WILLIAM S. DUNLAY, Appellant, *v.* AVENUE M GARAGE & REPAIR CO., INC., et al., Respondents, Impleaded with Another.

(Submitted February 14, 1930; decided March 18, 1930.)

*Max H. Newman* for appellant. Neither officers nor directors of a corporation may purchase unissued capital stock which results in their obtaining the corporate control, or for any advantageous purpose, without first affording to existing stockholders the right to participate, *pro rata*, in the purchase of such remaining unissued capital stock. (*Archer* v. *Hesse*, 164 App. Div. 493; *Whitaker* v. *Kilby*, 55 Misc. Rep. 337; *Yonkers Fur Dressing Co.* v. *Royal Ins. Co.*, 247 N. Y. 435; *Matter of Green* v. *Miller*, 249 N. Y. 88; *Bosworth* v. *Allen*, 168 N. Y. 157; *Harrington* v. *Erie Co. Sav. Bank*, 101 N. Y. 257; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Hassel* v. *Pohle*, 214 App. Div. 654.)

*Frank W. Holmes* for respondents. The findings are sustained by the evidence. (*Morgan* v. *Bon Bon Co.*, 222

N. Y. 22.) The directors had a right to issue for adequate consideration the seventy-six shares of unissued authorized capital stock. (*Archer* v. *Hesse*, 164 App. Div. 493; *Dusenberry* v. *Sagamore Dev. Co.*, 164 App. Div. 573; *Curry* v. *Scott*, 54 Penn. St. 277; *Russell* v. *American Gas & Electric Co.*, 152 App. Div. 136.)

POUND, J. The action is brought by plaintiff, who is the holder of twenty shares in defendant Avenue M Garage & Repair Co., Inc., to compel the defendants Ageno and Montalbine to return to the defendant corporation seventy-six shares of its capital stock alleged to have been issued to them improperly, and to restrain them from voting thereon. It arises out of a struggle between two factions of stockholders of a small corporation for the control of the directorate. The subject of shareholders' rights in such cases has given rise to extended discussion. (See "Shareholders' Pre-emptive Rights," by Frey, 38 Yale Law Journal, 563; "The Pre-emptive Right of Shareholders to Subscribe to New Shares," by Drinker, 43 Harvard Law Review, 586.) The controlling principles of law stated in the opinions must, however, be read in connection with the facts in the particular case before the courts.

The authorized capital stock of the defendant corporation consists of 800 shares of the par value of $50 per share. Prior to March 14, 1927, all the capital stock had been issued except 76 shares which consisted of unissued authorized capital stock. The affairs of the corporation had become somewhat involved. At a special meeting of the board of directors March 14, 1927, a resolution was adopted that 50 shares of such unissued stock should be issued to R. C. Graham, at par, in satisfaction of a debt owing to Graham from the corporation for services rendered to it as a salesman. Graham afterwards transferred the stock to defendant Guinan and he afterwards transferred the same to defendant Montalbine. At the

same time the board of directors authorized the issue of 26 shares of such unissued stock to defendant Ageno, at par, for cash to meet other outstanding indebtedness of the corporation. No opportunity was given to the shareholders generally to purchase such shares.

Ageno was president of the corporation and a member of the board of directors. His sister, the defendant Montalbine, was also a member of the board of directors and the resolution authorizing the issue of stock to defendant Ageno was adopted, over protest, by their votes. The result of this issue of 26 shares of stock to Ageno was not to give the Ageno faction a majority of the stock over the faction represented by plaintiff. Prior to the issuance of such stock, plaintiff's faction owned 378 shares of the total issued stock of 724 shares. With the 26 shares so issued the Ageno faction was still short of a majority but it afterwards acquired such control through the purchase by Ageno of 76 shares from Mr. May, another stockholder, and of the Graham shares by Montalbine. With this acquisition the Ageno faction had a majority which gave it the control of the board of directors and the corporation at the end of the year.

The plaintiff invokes the rule that neither officers nor directors of a corporation may purchase unissued capital stock which results in giving them control of the corporation without first affording to existing stockholders the right to participate *pro rata* in the purchase of such remaining unissued capital stock. The defendants take the position on the law that as the 76 shares of stock were not a new issue, nor treasury stock, but were merely unissued authorized capital stock, the directors had a right to sell them to any one at par, unless they were conspiring to injure the corporation or another stockholder. The court below has substantially upheld this latter contention on the law. The rule is too broadly

stated by the defendants and requires elucidation to prevent misapprehension.

It is well established that a stockholder has an inherent right to a proportionate share of new stock issued for money only and not to purchase property for the purposes of the corporation or to effect a consolidation and that while he can waive that right, he cannot be deprived of it without his consent except when the stock is issued at a fixed price not less than par and he is given the right to take it at that price in proportion to his holding or in some other equitable way that will enable him to protect his interest by acting on his own judgment and using his own resources. (*Stokes* v. *Continental Trust Co.*, 186 N. Y. 285.)

The reason for the rule is plain. The power to manage the affairs of a corporation resides in its directors. The power to elect directors resides in the stockholders. The right to vote for directors and on some other propositions as regulated by statute is about all the power the stockholder has. Hence, the power of the individual stockholder to vote in proportion to the number of his shares cannot be cut off or curtailed by the issue of shares of new stock without giving him an opportunity to participate therein. " Otherwise the majority could deprive the minority of their proportionate power in the election of directors and of their proportionate right to share in the surplus, each of which is an inherent, pre-emptive and vested right of property." (*Stokes* v. *Continental Trust Co.*, *supra*, at p. 298.) The court in such a case will protect the inherent right of the minority to have that status preserved against invasion even by the *bona fide* admission of new interests. This is no more than an application of the rule which requires directors to deal fairly with all their stockholders.

In respect to the balance of shares constituting the initial authorized issue, as distinguished from new shares, the case is different. The subscribers ordinarily take

such shares with the clear understanding that the subscription shall be completed before they may rely on the preservation of their proportional status. The understanding may, however, be otherwise. The issued stock may be related to the unissued stock as stock for immediate issue to stock for future expansion. In such case the pre-emptive right might not be denied. It has been too loosely stated that " a corporation may use its original unissued authorized capital stock for any legitimate or lawful purpose it sees fit." (*Archer* v. *Hesse*, 164 App. Div. 493, 497.) If the issue of the unissued original shares, whenever authorized, is reasonably necessary to raise money to be used in the business of the corporation rather than the expansion of such business beyond the original limits, the original shareholders have no right to count on obtaining and keeping their proportionate part of the original stock.

But this holding is not in conflict with another elementary rule. We are not dealing with the sale of a new issue of stock to outsiders as in the case of *Stokes* v. *Continental Trust Co.* (*supra*), or with unissued stock held for future expansion of corporate activities, but with the purchase of unissued stock by directors. Directors must always be free from fraud in their relations with their shareholders. Fair dealing is required. One formula of fair dealing is universally recognized, *i. e.*: Directors may not authorize the issue of unissued stock to themselves for the primary purpose of converting them from minority to majority stockholders. Such conduct, as indicated by ANDREWS, J., in *Whitaker* v. *Kilby* (55 Misc. Rep. 337; affd., 122 App. Div. 895), is inequitable in the highest degree. It involves a breach of the duty of the directors as fiduciaries representing all the stockholders, irrespective of any doctrine of pre-emptive right. " Corporate directors cannot manipulate the property, of which they have control in a trust relation, primarily with the intent to secure a majority of the stock or of directors in any particular

interest. This is not a fair exercise in good faith of the power with which they are clothed." (*Elliott* v. *Baker*, 194 Mass. 518.) Before acquiring stock for such a purpose the directors should offer it at a fixed price to all the stockholders, sell at auction or obtain a waiver of their rights.

Applying these principles of law to the facts found herein, the question arises whether the sale of the stock acquired by Ageno was primarily for a reasonably necessary purpose and beneficial to the corporation or for the sinister purpose of serving the personal ends of the directors in obtaining control of the corporation. The trial court has found in substance on the evidence that the shares in question were issued for full value and in good faith to discharge a debt to Graham, to raise money to meet corporate obligations and to enable the corporation to carry on its business and that no contest for corporate control was then afoot. Such shares as were issued to Ageno did not give his faction the control of the corporation which was obtained only when the additional shares were legitimately purchased from Graham and May. "The plaintiff is in the position of all minority stockholders, who cannot interfere with the management of the corporation so long as the trustees are acting honestly and within their discretionary powers." (*Burden* v. *Burden*, 159 N. Y. 287, 308.) He has failed to make out the breach of trust on which his cause of action rests.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.