■ ISADOR KATZOWITZ, Appellant v. JACOB SIDLER et al., Respondents. — Judgment of the Supreme Court, Westchester County, dated March 2, 1967, modified, on the law and the facts, by striking from the decretal paragraph the provision which directs that the complaint be dismissed and by substituting therefor a provision adjudging that the issuance by the defendant corporation's directors of preemptive rights for the purchase of 75 shares of the corporation's capital stock at the fixed price of $100 per share, although the book value at the time was $1,800 per share, was neither fradulant nor negligent; that the failure or refusal of the plaintiff to purchase the shares offered to him under such preemptive rights in proportion to his relative stock interest in the corporation constituted a waiver of his right to participate in such issue; that his protest against such issue, made after the dissolution of the corporation, was untimely and ineffective; and that the issuance of 25 shares each to the defendants Jacob Sidler and Max Lasker, pursuant to their preemptive rights, was valid, legal and effective. As so modified, judgment affirmed, with costs to respondents. The findings of fact below are affirmed and additional findings of fact are made as indicated herein. Plaintiff and the two individual defendants were the sole stockholders of the defendant corporation, each owning five shares thereof. These shares, having no par value, had been given a declared value of $100 by the board of directors. The total original capital investment in the corporation was $1,500. The three stockholders comprised the board of directors. On October 18, 1961, a notice was served on each director of a meeting to be held on October 30, 1961 to consider the distribution of an accumulation of

$7,500 in equal shares to the three stockholders for commissions which had been earned by them, and to discuss the issue of stock "the total par value of which shall equal the total sum of the fees and commissions now owing" and an offer to sell the same to the stockholders in accordance with their respective preemptive rights "for the purpose of acquiring funds necessary for its business operations". All three directors attended the meeting. The minutes of the meeting reveal that they authorized the payment of the $2,500 fees and commissions to each of them and that no other business was transacted. In his testimony on the trial, plaintiff said that the purpose of the sale of additional stock was to raise money to lend to another and subsidiary corporation wholly owned by the individual parties. Plaintiff. although he was paid a salary equal to that paid to the other two stockholders, was not an employee or officer of any of their corporations. He announced his opposition to the plan to lend money to the other corporation and said he did not want his money to go into it. On November 24, 1961 there was served on each director a notice of a directors' meeting to discuss the issue of 75 shares of capital stock at the declared value of $100 each, to be offered to the stockholders in accordance with their preemptive rights. Plaintiff did not attend that meeting and the other two directors adopted the implementing resolution. On December 1, 1961 each stockholder was sent a certificate of preemptive rights which provided "that unless such proportionate shares are purchased and paid for by any of the stockholders on or before the 27th day of December, 1961, such failure of a stockholder shall constitute an irrevocable waiver of the rights of such stockholder to purchase and take any of said Seventy-Five (75) shares to be newly issued." On December 7, 1961 there was mailed to plaintiff a check for $2,500 for his share of the earned commissions. By December 27, 1961 the two individual defendants each bought the 25 shares allotted to him. Plaintiff failed to do so. On August 25, 1962 the principal asset of the corporation, a tank and truck, was totally destroyed in an accident. On August 31, 1962, at a special meeting of the board of directors, attended by plaintiff, it was resolved to dissolve the corporation and distribute the net liquidated assets to the stockholders in proportion to their holdings. When this was done and plaintiff received only $3,147.59 as against the sum of $18,885.52 to each of the others, he brought this action to declare the sale of the additional stock to be illegal and void. While the disparity between the price at which the stock was offered and the book value of those shares may be considered in determining whether or not fraud or overreaching was committed by defendants, it must be considered in the light of all the surrounding circumstances. It is not, in and of itself, sufficient to prove such fraud (cf. *Greenbaum* v. *American Metal Climax,* 27 A D 2d 225). In the instant case there was no proof of a breach of any fiduciary obligation on the part of the individual defendants as stockholders or as directors of this close corporation (*Borden* v. *Guthrie,* 23 A D 2d 313). With full knowledge of the offer to sell the additional stock and possessed of the right to purchase his proportionate share thereof, plaintiff neither accepted the offer to purchase nor took any steps to prevent the sale. He must therefore be declared to have knowingly waived his right to purchase such stock or to object to the sale to the others. His protest on the dissolution of the corporation was untimely and wholly ineffective. In an action for a declaratory judgment the complaint may not be dismissed simply because the plaintiff is not entitled to a declaration in his favor. A declaration must be made in any event (*Rockland Light & Power Co.* v. *City of New York,* 289 N. Y. 45). Christ, Acting P. J., Brennan and Munder, JJ., concur; Rabin and Hopkins, JJ., dissent and vote to reverse the judg-

ment and to grant judgment in favor of plaintiff against defendants Jacob Sidler and Max Lasker in the sum of $8,825.28, with the following memorandum: An earlier litigation between the parties was settled by a stipulation, by the terms of which the parties agreed, among other things, that the employment of plaintiff by the corporate defendant was terminated; that, however, plaintiff should receive the equivalent salary paid in the future to the two individual defendants; and that plaintiff and the two individual defendants were "equal stockholders and each of said parties now owns the same number of shares of stock in each of the defendant corporations and that such shares of stock shall continue to be in full force and effect and unaffected by this stipulation, except as hereby otherwise expressly provided." The stipulation contains no provision otherwise affecting plaintiff's equal stock interest. Yet on liquidation of the corporation plaintiff has received less than his one-third share. This result has been reached by the action of the defendants through the device of declaring a distribution of $2,500 to each of the three stockholders, which sum in turn was used by the two individual defendants to purchase a new issue of stock authorized by a resolution adopted by their vote as directors. It is significant that the liquidation of the corporation occurred less than a year after the purchase of the additional stock by the individual defendants. We think that the dilution of plaintiff's interest by this device was both inequitable and unlawful on two counts. First, the stipulation of the prior litigation, if indeed it did not expressly make clear (as we believe) the intent of the parties that the three stockholders should continue to have equal interests, at the least was pregnant with an obligation imposed on the individual defendants to treat plaintiff equally. Second, the rights of plaintiff, whether considered either as preemptive as a matter of law or simply the outgrowth of equities springing from the relations of the parties, are enforcible to the extent of compelling the individual defendants to deal fairly with him, and not for their exclusive benefit and to his detriment. In a close corporation, the relations between the stockholders themselves are akin to a partnership — a view which prompted the first determination recognizing the existence of preemptive rights to the subscription of new stock by the existing stockholders (see *Gray* v. *Portland Bank*, 3 Mass. 363, 378; cf. *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285, 299). The directors of a corporation are fiduciaries and must fairly treat the stockholders in the issuance of new stock (*Dunlay* v. *Avenue M. Garage & Repair Co.*, 253 N. Y. 274; *Hammer* v. *Werner*, 239 App. Div. 38, 42; *Albrecht, Maguire & Co.* v. *General Plastics*, 256 App. Div. 134, affd. 280 N. Y. 840). "Irrespective of any rule of pre-emptive rights, it is a breach of duty on the part of directors to issue additional shares or to sell treasury shares, not to benefit the shareholders, but to benefit themselves, or to enable particular stockholders or others to acquire voting control of the corporation, *or to enable them to acquire shares at less than their value*" (Morawetz, The Preemptive Right of Shareholders, 42 Harv. L. Rev. 186, 188 [emphasis supplied]). Here the obvious disparity between the fixed price of $100 per share and the book value of $1,800 per share is so gross and calculated, especially in the light of the distribution of the funds of the corporation immediately preceding the purchase of the new stock in order to finance its acquisition, that the conclusion is irresistible that the individual defendants breached the duty of fair dealing owed to plaintiff, for their personal advantage. It is no answer to say, as do defendants, that plaintiff was given the opportunity to purchase his proportionate share of the new issue and failed to do so. He protested the issuance of the new stock and the entry of the corporation into a new venture which the proceeds of the sale of the stock were designed to promote;

958

and defendants cannot excuse their failure to observe their duty because plaintiff did not ratify their conduct by subscribing to the new stock. Such a conclusion would be tantamount to placing plaintiff in the position of either condoning the breach of duty on the part of defendants or losing a substantial part of his equity in the assets of the corporation by refusing to invest in a projected activity of the corporation with which he disagreed. If the individual defendants had fixed a fair value for the new stock, plaintiff could have no complaint, for no loss of his equity would have been sustained. Though expressions in the cases are found in which it is said that the directors may fix the price for the stock which is subject to the preemptive rights at no less than par (*Dunlay* v. *Avenue M. Garage & Repair Co.*, 253 N. Y. 274, 278, *supra*), par as a value is simply a statement of the price fixed and has no necessary identity with fair value. Hence, toward stockholders in a close corporation, the duty of the directors to determine a fair value for the sale of new stock is apparent (see Berle, Corporate powers as Powers in Trust, 44 Harv. L. Rev. 1049, 1055-1060; Berle, Corporate Devices for Diluting Stock Participations, 31 Col. L. Rev. 1239, 1241-1243, 1257-1260; note, 71 Harv. L. Rev. 1133), and the courts have acknowledged the presence of the duty (*Tashman* v. *Tashman*, 13 Misc 2d 982; *Stevens* v. *Hale-Haas Corp.*, 249 Wis. 205; *Gord* v. *Iowana Farms Milk Co.*, 245 Iowa 1; *Bennett* v. *Breuil Petroleum Corp.*, 34 Del. Ch. 6). Our conclusion is, accordingly, that equitable principles demand the fair treatment of plaintiff in the management of the corporation and that he should be paid his aliquot share of the assets of the corporation on liquidation in accordance with the value of his share as it existed prior to the issuance of the new stock, less, of course the amount paid by the individual defendants for the purchase of the stock, for which they are entitled to credit.