Minnie F. Hoyt, as Executrix, etc., of Albert Sherman Hoyt, Deceased, Respondent, *v.* Great American Insurance Company, Appellant.

First Department, May 19, 1922.

Corporations — capital stock — action by executrix of stockholder based on failure of corporation to give stockholder reasonable opportunity to subscribe for pro rata share of increased capital stock — right to subscribe to increase not statutory and subject to reasonable conditions — time given by defendant within which to subscribe not unreasonable — facts pleaded as defense show that defendant used reasonable efforts to notify testator of his rights — stockholder must allege and prove demand for pro rata share of increased stock and offer to subscribe and pay therefor within time limited.

The right of a stockholder of a corporation to obtain a proportionate share of any increase in the capital stock upon the same terms as the other stockholders is not statutory but rests upon the common law and he is entitled to a reasonable opportunity to subscribe and pay for his proportionate share of the increase, but his right thereto is subject to such reasonable conditions as may be imposed by a majority of the stockholders authorizing the increase.

A condition imposed by stockholders of an insurance corporation which increased its capital stock on October 24, 1918, that the stockholders, if they desired to avail themselves of the opportunity to purchase a *pro rata* share of the increase, should subscribe for and fully pay for the same on or before December 16, 1918, is not unreasonable, where it appears that if the increased stock had not been fully subscribed for and paid in before January 1, 1919, the corporation would not have been permitted to avail itself of the increase in its capital stock for the year 1919 in connection with its business, nor advertise, nor in any way report that its capital stock had been increased.

In an action by an executrix of a stockholder of a corporation against the corporation to recover damages based on the alleged failure of the corporation to give to the stockholder or his executrix a reasonable opportunity to subscribe to a proportionate amount of the increase of the capital stock of the corporation, a defense to the action is sufficient in law, where it is alleged that the capital stock was increased on October 24, 1918; that a copy of the notice of said meeting stating its purpose was inclosed in a sealed, postpaid envelope, addressed to the testator at his address appearing on the books of the corporation at Yokohama, Japan, on October 7, 1918; that following the adoption of the resolution increasing the stock and on the 25th day of October, 1918, the defendant " duly mailed to its stockholders " a circular notifying them of the increase in the capital stock, and that subscription warrants would be issued in a few days, and advising its stockholders that subscriptions would have to be made and fully paid for on or before December 16, 1918; that defendant, realizing that the notice would not reach the testator in Japan in time to permit him to avail himself of the opportunity to subscribe, sent a copy thereof to the Title Guaranty and Trust Company in Brooklyn, N. Y., which company received dividends for the plaintiff's testator on stock in the defendant corporation; that said trust company advised the defendant that the plaintiff's testator had returned to America and gave the defendant the name of his counsel in New York city who attended to all of his personal business affairs, and that the defendant thereupon sent the·

subscription warrants covering the rights of the plaintiff's testator to the increased stock to said firm of attorneys and asked them for instructions in regard to the exercise of testator's rights, but that no instructions were received and plaintiff's proportionate share of the stock was thereafter sold.

In an action against a corporation to recover damages for failure to give the stockholder a reasonable opportunity to subscribe for his proportion of the increase in capital stock, it must be alleged and proved that he demanded his proportion of the stock and offered to subscribe and pay for it within the time fixed and in the manner provided by the corporation.

APPEAL by the defendant, Great American Insurance Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of April, 1921 sustaining plaintiff's demurrer to defendant's affirmative defense to the first cause of action set forth in the complaint.

*Shearman & Sterling [Chauncey B. Garver* of counsel; *John A. Garver* with him on the brief], for the appellant.

*Fraser, Speir & Meyer [Schuyler M. Meyer* of counsel, for the respondent.

MERRELL, J.:

The first cause of action is to recover the sum of $8,662.50 damages claimed to have been sustained by the plaintiff from the alleged failure of the defendant to give to plaintiff or her testator a reasonable opportunity to subscribe to a proportionate amount of the increase of the capital stock of the defendant corporation.

Prior to October 24, 1918, the authorized capital stock of the defendant was $2,000,000, divided into 20,000 shares of the par value of $100 each. Plaintiff's testator owned on said date 35 shares of said capital stock. He was a resident of South Pasadena, in the county of Los Angeles, State of California. The complaint alleges that on said October 24, 1918, at a special meeting of the stockholders of the defendant the capital stock of the defendant corporation was increased to $5,000,000, such increase being represented by 30,000 shares of the par value of $100 each, and that on October 26, 1918, a certificate in conformity to the requirements of the statute* was filed purporting to increase the capital stock of the defendant as aforesaid. The complaint alleges that plaintiff's testator received no advance notice of said special meeting of the stockholders and had no knowledge thereof or that any meeting of the stockholders of the defendant was to be held for any purpose on said date, and that no advance notice of said meeting was given

* See Stock Corp. Law, § 64, as amd. by Laws of 1913, chap. 305. See, also, Stock Corp. Law, §§ 62, 63.— [REP.

or sent to plaintiff's testator at his last known post office address. In her complaint the plaintiff further alleges, upon information and belief, that at said special meeting resolutions were adopted by the stockholders of the defendant authorizing its directors to offer said increased stock to its stockholders for subscription *pro rata* according to their respective stock holdings at the close of business on October 24, 1918, at the price of $150 per share, payable in cash, *" and that defendant, pursuant to said resolutions, made such offer to its stockholders on or about November 4, 1918."* Plaintiff further alleges that her testator, as such stockholder, had the right to have issued to him $52\frac{1}{2}$ shares of such increased stock, being his *pro rata* share of such increase, at $150 per share. Plaintiff further alleges, upon information and belief, that at the time said offer of subscription to such increased stock at $150 per share was made by the defendant to the stockholders, the stock of the defendant was worth greatly in excess of $150 per share, and that the actual market value thereof was in excess of $500 per share, and that the right to subscribe to said increased stock at $150 per share was alone of the actual or market value at least of $205 per share. Plaintiff further alleges that her testator died on or about November 10, 1918, a domiciled resident of South Pasadena, in the State of California, aforesaid, and that plaintiff is the sole executrix duly appointed, qualified and acting under and pursuant to the last will and testament of said testator. The plaintiff further alleges that the plaintiff's testator and his legal representatives have been ready and willing to subscribe for said $52\frac{1}{2}$ shares of said increased stock, but that, notwithstanding the defendant had full knowledge that such increased stock was worth greatly in excess of said subscription price of $150 per share and that said subscription rights of its stockholders were worth and could be sold for at least $205 per share, it, nevertheless, failed to give to the testator or his legal representatives a reasonable opportunity to subscribe for said increased stock; that in violation of the rights of plaintiff's testator and of his legal representatives, the defendant, on or about December 15, 1918, disposed of said $52\frac{1}{2}$ shares of said increased stock by private sale thereof to its directors or to some of them, and that said shares were on or about said date issued by said defendant to said directors or to other persons, at the agreed price of $150 per share; that at the time of such issue of said $52\frac{1}{2}$ shares to said directors or other parties said increased stock had an actual or market value of at least $315 per share, and that said sale was illegal, invalid and wholly void, and in fraud of the rights of plaintiff's testator and his legal representatives. Plaintiff further alleges

that she desires and is ready and able to obtain her said proportionate share of said increased stock and that by reason of defendant's acts, if defendant is unable to issue and deliver to plaintiff any part of said shares consisting of said proportion thereof, plaintiff will have suffered damage in the sum of $8,662.50.

As a defense to plaintiff's said first cause of action, in its answer the defendant alleged that on or about October 24, 1918, the capital stock of the defendant was *duly* increased from $2,000,000, divided into 20,000 shares of the par value of $100 each, to $5,000,000, divided into 50,000 shares of the par value of $100 each, pursuant to a resolution duly adopted by more than a majority of the stockholders of the defendant at a meeting of said stockholders duly held on that day. The defendant further alleges that a copy of the notice of said meeting, stating the purpose thereof, was inclosed in a sealed, postpaid envelope, addressed to plaintiff's testator, post office box 250, Yokohama, Japan, which was the address of said testator appearing upon the books of the defendant and the last address which he had furnished it, and his last address known to the defendant, and was duly mailed on or about October 7, 1918; that accompanying the said notice was a circular letter to the defendant's said stockholder stating the reasons for the increase of its capital stock, and that it was of great importance to have all of the stock issued and paid for before the end of the year 1918, and further stating that the new stock would be issued to the stockholders, in proportion to their holdings, at $150 a share, one-half of the purchase price to be called for in about thirty days from the time of the increase and the remaining one-half in about sixty days. The defendant further alleges in its said separate answer to plaintiff's first cause of action that on or about October 25, 1918, the defendant " duly mailed to its stockholders " a circular letter notifying them of the said increase of stock and that subscription warrants would be issued in a few days permitting them to subscribe to a proportionate amount of the increased stock at $150 a share, and that subscriptions would have to be made, one-half of the purchase price to be paid on or about November 18, 1918, and the balance thereof to be paid or or before December 16, 1918; that on or about November 4, 1918, such subscription warrants were mailed by the defendant to its stockholders. The defendant in its said answer further alleges that at the times mentioned and for some time prior thereto the defendant had, pursuant to authorization from plaintiff's testator, sent checks for dividends on the stock standing in his name to the Title Guarantee and Trust Company, at 175 Remsen street, Brooklyn, N. Y.; and knowing that there would not be time for the said testator to exercise his right to

subscribe for the proportionate part of the increased stock within the time fixed for such subscription, if the subscription warrant were sent to him at his registered address in Japan, the defendant sent a copy of its said letter of October 25, 1918, to the said Title Guarantee and Trust Company with a letter inquiring whether said trust company was authorized to take any action in connection with the said subscription rights of the stock standing in the name of plaintiff's testator. The Title Guarantee and Trust Company, in reply to defendant's said inquiry, informed the defendant that plaintiff's testator had then returned to America, and that Messrs. Steele & Otis, of 25 Broad street, New York city, were his counsel, who attended to all his personal business affairs, and that the matter should be taken up with them. Alleging that the defendant fully believed that the said Steele & Otis did have charge of the personal business affairs of plaintiff's said testator, defendant alleged in its said answer that it accordingly sent the subscription warrants covering the rights on the said stock standing in the testator's name to the said Steele & Otis on or about November 4, 1918, and asked them for instructions in regard to the exercise of the said rights; that the defendant received no instructions from them; that no subscriptions for the said $52\frac{1}{2}$ shares of its increased stock and no payment therefor were received by the defendant from the said testator or any one on his behalf on or prior to December 16, 1918. The defendant further alleges that it was of the utmost importance to the defendant to have issued all of the said increased stock, and that the same should be paid for in cash before the end of the year 1918 in order that it might obtain from the Superintendent of Insurance of the State of New York a certificate that it had a paid-in capital stock of $5,000,000, without which its increased stock would not have been made available in connection with its business at the opening of the year 1919, and under the Insurance Law it could not advertise or in any way report that its capital stock had been increased to $5,000,000; that on or about December 19, 1918, the defendant sold 486 shares of said increased stock, the said shares being all of such stock not theretofore subscribed and paid for by its stockholders or their assigns, for $150 per share; that said 486 shares included the $52\frac{1}{2}$ shares to which the plaintiff's testator would have been entitled to subscribe; that certificates for the fully-paid shares were thereupon issued to the said purchasers and all of said increased stock was issued and paid for in full before the close of the year 1918, and that the defendant obtained from the Superintendent of Insurance the necessary certificate making its said increase of stock effective for the business of the defendant for the year 1919.

The plaintiff demurred to said separate defense to her first cause of action upon the ground that it was insufficient in law upon the face thereof. The learned court at Special Term, by the order appealed from, sustained said demurrer, and granted judgment dismissing the defendant's said affirmative defense. The court's action in sustaining plaintiff's demurrer was upon the ground that reasonable time was not given to plaintiff's testator to purchase his *pro rata* share of the increased stock at the price voted at the said special meeting of the stockholders of the defendant corporation. (115 Misc. Rep. 1.) We think the court erred in thus holding that the defendant did not state facts sufficient to constitute a defense to plaintiff's said cause of action.

The rights of plaintiff's testator, to which the plaintiff succeeded, are not statutory, but, under the decisions of our courts, each stockholder is entitled to reasonable opportunity to obtain his proportionate share in any increase of the capital stock of a corporation upon the same terms as the other stockholders. (*Stokes* v. *Continental Trust Co.*, 186 N. Y. 285; *Noble* v. *Great American Ins. Co.*, 200 App. Div. 773.) Such rights of a stockholder, however, are subject to such reasonable conditions as are imposed by a majority of the stockholders of the corporation authorizing such increase. The only question presented upon this appeal is as to whether or not plaintiff's testator or plaintiff as his successor was afforded reasonable opportunity to take advantage of the right to share in said increase of stock at the price fixed by a majority of the stockholders. There can be no question as to the right of the stockholders to impose the conditions under which said subscriptions were to be made. In *Stokes* v. *Continental Trust Co.* (*supra*, 298) it was said: " A majority of the stockholders, as part of their power to increase the stock, may attach reasonable conditions to the disposition thereof,   *   *   *."

For the purpose of the demurrer the facts alleged in said separate defense must be taken as true. Facts are alleged in the answer, showing the necessity for increasing said capital stock and for obtaining the necessary certificate from the Superintendent of Insurance showing said increase prior to the 1st of January, 1919. It was, we think, not unreasonable for a majority of the stockholders to impose the condition that the shares of said increase of stock should be subscribed and paid for on or before December 16, 1918. Nor does the law require actual notice to every stockholder of the proposed increase. All that the corporation was required to do was to act in a reasonable manner and to do what it reasonably could to afford its old stockholders an opportunity to share in the increase. The answer alleges that the resolution for the increase

of said stock was " *duly adopted* " by a majority of the stockholders at a meeting " *duly held* " on October 24, 1918, and that a copy of the notice of said meeting, stating its purpose, was inclosed in a sealed, postpaid envelope, addressed to plaintiff's testator at his address appearing on the books of the defendant, and the last address which he had furnished it, and which was the testator's last address known to the defendant, at post office box 250, Yokohama, Japan, and which notice was duly mailed on or about October 7, 1918. Following the adoption of the resolution increasing said stock, and on October 25, 1918, it is alleged in the answer that " the defendant duly mailed to its stockholders " a circular letter notifying them of said increase of stock, and that subscription warrants would be issued in a few days. Realizing that said notice would not reach the testator in Japan in time to permit him to avail himself of the opportunity to subscribe for his proportionate share of said increase, the defendant sent a copy of its said letter of October 25, 1918, to the Title Guarantee and Trust Company, in Brooklyn, N. Y., to which trust company the defendant had, pursuant to authority from the testator, sent checks for dividends on the stock standing in his name, together with a letter inquiring whether said trust company was authorized to take any action in connection with the said subscription rights of plaintiff's testator; that the defendant received a reply to said letter from the Title Guarantee and Trust Company, informing the defendant that plaintiff's testator had returned to America, and that his counsel in New York city, who attended to all of his personal business affairs, were Steele & Otis, of 25 Broad street, and that the matter should be taken up with them. Believing that said Steele & Otis did have charge of the personal business affairs of plaintiff's testator, the defendant sent the subscription warrants covering the rights on said stock standing in said testator's name to said Steele & Otis on November 4, 1918, and asked them for instructions in regard to the exercise of said rights. No instructions with reference thereto were received by the defendant. It seems to us that the defendant used every effort reasonably within its power to notify plaintiff's testator of his rights in the premises. Through no fault of the defendant said testator had rendered it impossible for the defendant to give him actual notice. The law does not require the impossible. It would hardly be contended that had the stockholder gone to a remote part of the earth, thus putting it beyond the power of the defendant to give him actual notice of the proposed increase of the stock, and without providing for the giving of such notice to some authorized agent, the corporation would be denied the right to increase its stock. The defendant, having been furnished by the

stockholder with his address at Yokohama, Japan, and that being the last address furnished the defendant by the stockholder, and the defendant realizing that it would be impossible to give the stockholder actual notice of his rights with reference to said increase at so remote a point, did the next best thing and informed the stockholder's agent, to whom he had authorized the payment of his stock dividends, and inquired of them as to whether they were authorized to exercise the rights of their principal with reference to said stock increase. Being directed to a firm of attorneys in New York, who had charge of the stockholder's private affairs, the defendant at once notified said attorneys. No instructions having been received from them and no word coming from the stockholder or his personal representative, he then having died, on December nineteenth the defendant disposed of all unsubscribed stock, including that to which the testator would have been entitled had he taken advantage of his rights with reference thereto. It seems to us that the defendant used every reasonable effort to safeguard the testator's rights in the premises.

Moreover, we do not think the facts disclose a proper foundation upon which the plaintiff could ask damages. Cook on Corporations (7th ed. § 286) provides: " The stockholder * * * who brings his action against the corporation for damages for refusal to allow him to subscribe for the new stock, or for selling the stock to someone else, or for depriving him in any other way of it, must allege and prove that he demanded the stock and offered to subscribe and pay for it in the regular way, within the time fixed for such subscriptions."

The English courts have passed upon the rights of the stockholder in such cases. It has been held in England that when a notice of a right to subscribe to new stock was sent out on July twenty-fifth, and which stated that the right to subscribe must be exercised on or before August tenth, the stockholder lost his right by not subscribing within the time limited, although he was in Naples and did not actually receive the notice until a date subsequent to that limited for making his subscription. (*Pearson* v. *London, etc., Ry. Co.*, 14 Sim. 541.) Unquestionably a majority of the stockholders had a right to fix a period of subscription to suit themselves and the interests of the corporation which they owned. The only limit upon the exercise of such prerogative was that every stockholder should be treated alike, and should be afforded a reasonable opportunity to subscribe for the increase. If, as in the case at bar, a stockholder places himself in such a position that the reasonable notice prescribed by his fellow-stockholders cannot be given him in time for him to act thereon, it seems to us that he alone should suffer by reason of his acts. Plaintiff's testator must have

known of the usual exigencies of business, and when he placed himself beyond the power of the defendant to give him actual notice without furnishing a reasonably accessible address or leaving someone authorized to act for him, he should not be heard to complain. Were this question to be decided upon technical grounds, we think the allegation contained in the complaint that " the defendant, pursuant to said resolutions, made such offer to its stockholders on or about November 4th, 1918," precludes the plaintiff from proving failure on the defendant's part to actually notify its stockholder. Such allegation qualifies the allegations of the complaint that the defendant failed to give plaintiff's testator or his legal representatives a reasonable opportunity to subscribe for the new stock. But for the reasons hereinbefore stated, we think the defendant used every reasonable effort to insure its stockholders an opportunity to subscribe for the increased stock, and that the failure of the stockholder to receive the mailed notice of said increase and of his rights thereunder came from no fault of the defendant, but was due directly to the negligence of the testator and his personal representatives.

It, therefore, follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the demurrer to the affirmative defense to plaintiff's first cause of action should be overruled, with ten dollars costs, with leave to plaintiff to withdraw the demurrer on payment of said costs.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and demurrer overruled, with ten dollars costs, with leave to plaintiff to withdraw demurrer on payment of said costs.

