## SHAW v. DREYFUS et al.
### Civ. 43–451.

District Court, S. D. New York.
July 7, 1948.

Morris J. Levy, of New York City, for plaintiff.

Shearman & Sterling & Wright, of New York City (John A. Wilson, Clifford M. Bowden and Michael J. DeSantis, all of New York City, of counsel), for defendants.

GODDARD, District Judge.

Motion by plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for summary judgment with respect to the First and Third causes of action, and cross motion for summary judgment with respect to each of the three causes of action set forth in the complaint. Plaintiff concedes that defendants are entitled to summary judgment in the Second cause of action.

The action is by a stockholder of the Celenese Corporation of America [hereinafter referred to as the Corporation] suing on her own behalf and all other stockholders similarly situated, and is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934 15 U.S.C.A. § 78p (b), to compel the defendant Dreyfus to account for and pay over to the defendant, the Corporation, profits alleged to have been made by him from "purchases and sales and sales and purchases" of common stock and rights to purchase said stock within periods of less than six months.

Pursuant to resolutions adopted by the Board of Directors the Corporation issued to its common stockholders of record rights to subscribe at $50 a share to additional shares of common stock on the basis of one share for each 10 shares held. The rights were mailed out on October 9, 1945 and were to be exercised on or before November 24, 1945. Dreyfus was the holder of record of 106,343 shares of common stock of the Corporation, and accordingly received 106,343 rights from the Corporation entitling him to subscribe for 10634$\frac{3}{10}$ additional shares of the Corporation's common stock.

Dreyfus was then and now is a director and chairman of the Corporation.

During the month of October Dreyfus sold, through brokers, 76,340 rights, for which he received $5,915.41. On October 22nd Dreyfus exercised the 30,000 of his remaining rights and subscribed for and was issued on October 23rd 3,000 shares of the common stock of the Corporation. Of these 3,000 shares between November 12, 1945 and January 6, 1946 he gave away 1,460 shares. The donees were five of his relatives, three intimate friends, and ten members of their families, a personal employee, and two employees of the Corporation. No consideration for the stock was received from any of them.

Dreyfus filed gift tax returns with the Internal Revenue Department for the years 1945 and 1946, in connection with these gifts, which had a greater value of $3,000. He also filed reports with the Securities Exchange Commission reflecting the transfers of the 1,460 shares of common stock as gifts.

The plaintiff contends that the receipt of the "rights" by Dreyfus is covered by the words "otherwise acquire" contained in Section 3(a) (13) of the Act, 15 U.S.C.A. § 78c(a) (13), which reads—in part "the terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire".

The defendants urge that the transactions complained of are not within the coverage

of Section 16(b) of the Securities Exchange Act and argue that the receipt by Dreyfus of the "rights" to subscribe was not a transaction within the terms of Section 3(a) (13) of the Act.

In respect to the Third cause of action, the plaintiff argues that the "gifts" made by Dreyfus fall within the terms " 'sale' and 'sell' each include any contract to sell or otherwise dispose of".

In the First cause of action the question for determination is whether the receipt by Dreyfus of 106,343 rights from the Corporation and his sale of 76,340 of them was a "purchase and sale" within the meaning of Section 16(b) of the Securities Exchange Act [1] as those words are defined in Section 3(a) (13) of the Act.

Dreyfus did not purchase or acquire the right to subscribe for the new stock when the certificates or script were issued to him. These were but formal evidence of the rights he acquired when he bought the stock originally. The rights which were distributed to all the stockholders, including Dreyfus, were rights inherent in the stock. Miles v. Safe Deposit Co., 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923.

"The new stock issued by the defendant [the corporation] under the permission of the statute did not belong to it, but was held * * * in trust for the stockholders. * * * The new stock belonged to the stockholders as an inherent right by virtue of their being stockholders, to be shared in proportion upon paying its par value or the par value per share fixed by vote of a majority of the stockholders, * * *. He [the stockholder] had an inchoate right to one share of the new stock for each share owned by him of the old stock, provided he was ready to pay the price fixed by the stockholders. If so situated that he could not take it himself, he was entitled to sell the right to one who could, as is frequently done. * * *

A share of stock is a share in the power to increase the stock, and belongs to the stockholders the same as the stock itself. When that power is exercised, the new stock belongs to the old stockholders in proportion to their holdings of old stock, subject to compliance with the lawful terms upon which it is issued." Stokes v. Continental Trust Co., 186 N.Y. 285, 297, 299, 78 N.E. 1090, 1094, 12 L.R.A.,N.S., 969, 9 Ann.Cas. 738.

See also Hammer v. Werner, 239 App. Div. 38, 265 N.Y.S. 172; Albrecht, Maguire & Co. v. General Plastics, Inc., 256 App.Div. 134, 9 N.Y.S.2d 415; People ex rel New York Trust Co. v. Graves, et al., 265 App.Div. 94, 37 N.Y.S.2d 900; 11 Fletcher Cyc. Corp., Section 5136, p. 223.

When a subscription offering is made and rights are issued, the stock, together with the right, represent the stockholder's original investment in the Corporation. See Macy v. Helvering, 2 Cir., 82 F.2d 183.

When the Corporation authorized and issued the new securities the defendant

---

[1] "(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

Dreyfus had a pre-emptive right to subscribe regardless of whether the Corporation issued to him the physical certificate evidencing this right. The script or "rights" issued by the corporation were merely formal acknowledgment of an option which Dreyfus already possessed as a stockholder. See Palmer v. Commissioner, 302 U.S. 63, 71, 58 S.Ct. 67, 82 L.Ed. 50; Helvering v. Bartlett, 4 Cir., 71 F.2d 598. Dreyfus acquired nothing new except the document certifying to his right.

■ The word "acquire" connotes the obtaining of something which was not possessed previously.

In Park & Tilford v. Schulte, 2 Cir., 160 F.2d 984, it was held that the conversion or exercise of a right to convert preferred stock into common stock was a "purchase" within the meaning of Section 3(a) of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78c (a) (13). It would seem to follow that if the exercise of the "right" is a "purchase" the mere receipt of the right cannot also be a purchase.

■ To construe the Act as requiring Dreyfus to hold his rights beyond the six months and allow them to expire or to sell them within the period and account to the Corporation for the proceeds, would be confiscatory, unreasonable, of doubtful constitutionality, and not, I think, within the intent of the Congress. It is my opinion that the receipt by Dreyfus of the "rights" or script does not come within the terms "buy, purchase, or otherwise acquire" as those words are used in Section 78c (a) (13) of the Securities Exchange Act of 1934.

■ When Dreyfus exercised his option and subscribed and paid for the stock, he purchased or otherwise acquired it. Park & Tilford v. Schulte, supra. However, liability under Section 16 of the Act, 15 U.S. C.A. § 78p (b) is limited to the profit in the transaction. Smolowe et al v. Delendo Corporation, et al, 2 Cir., 136 F.2d 231, 148 A.L.R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446. Of the 3,000 Shares Dreyfus purchased, he kept 1,540 shares and gave away 1,460. It is alleged and not denied that the gifts were bona fide gifts. Dreyfus received no financial gain or profit from the transaction; therefore no liability under Section 16(b) of the Act. See Statutory Inhibition upon Unfair Use of Corporation Information by Rubin and Feldman, 95 Pa.Law Review 486.

Plaintiff's motion for summary judgment on the First and Third Causes of action is denied. Defendants' cross motion for summary judgment dismissing the three causes of action is granted.

Settle order on notice.